Geaham, Judge,
delivered the opinion of the court:
This case involves the construction of the postal savings act, June 25,1910, 36 Stat. 818, and the regulations and practice thereunder in connection with payment of a deposit on account of a deceased depositor, and whether this court can enter a judgment against the United States for the amount deposited, with accumulated interest. A brief statement of the facts is necessary.
Plaintiff’s intestate, Mike Mesich, an alien and a miner by occupation, in his wanderings entered the State of Utah, and having saved $2,500 from his earnings deposited the sum, *85 under the name of Mike Masich in the post office at Bingham Canyon, Utah, and received from the postmaster five postal savings certificates of $500 each, bearing interest at two per cent per annum. A copy of one of the certificates is set out footnote.[1]
Thereafter he left Utah and entered the State of Nevada, where he saved from his earnings as a miner $2,892, which deposited in the First National Bank of Ely, Nevada. While there he lived with his brother, the intervenor administrator in this case. He then went to Sacramento, California, *86 where a sister resided, the petitioner administratrix in this case. After stopping there a short time he left his postal savings certificates in the possession of this sister to hold for him, and proceeded to Fresno, where he secured occupation,, and as he was accustomed to do made some savings from his-labor. At this point in his life he was killed by an explosion. His brother in Nevada took out letters of administration in. Nevada on his estate there, and thereafter his sister in California took out letters of administration in California on his estate there. The Nevada administrator proceeded to Utah, and by a court of competent jurisdiction was appointed, administrator for that State. He then applied to the local postmaster at Bingham Canyon and afterwards to the Postmaster General for payment to him of the amount on deposit with the postal savings bank. The Postmaster General raised objections upon the ground that he did not have the-certificates in his possession to surrender as required by the-regulations, but that they were in possession of the California administratrix and directed him to secure possession. He failed to do this and asked for the issuance of duplicate-certificates by the Postmaster General as authorized by the-regulations.
At this point in the negotiations the California admin-istratrix entered suit in this court and the Postmaster-General refused to proceed further in the case. The question is whether this court can enter a judgment here against the United States.
By the postal savings bank act, supra, the postal savings-system was created and the method for its operation was set mt in some detail. The first paragraph of the act creates.- “ * * * a board of trustees for the control, supervision,, and administration of the postal savings depository offices designated and established under the provisions of this act,, and of the funds received as deposits,” this board to consist of the Postmaster General, the Secretary of the Treasury,, and the Attorney General, severally, acting ex officio, and to-have power to make all necessary and proper regulations» “ for the receipt, transmittal, custody, deposit, investment,, and repayment of the funds deposited.”
*87 The Postmaster General was authorized to designate by order the offices which were to become postal savings depositories and these offices were authorized and required to receive deposits. The Postmaster General was directed to use the pass-book system or such other device as he might see fit to adopt, and he adopted the certificate form. Interest was to be paid at 2 per cent per annum on the deposits to be computed under such “ rules and regulations as the board of trustees may prescribe.” The funds received were to be deposited in solvent banks in the “ city, town, village, or locality ” where the postal savings deposits were made. If there were no such banks where such deposits were made, or they refused to or did not qualify, then in the bank most convenient to such locality. If no such bank existed in the State or Territory, or no bank was willing to receive such deposits, then the same were to be deposited with the treasurer of the board of trustees, 5 per cent of the deposits being reserved and placed in the hands of the Treasurer of the United States as treasurer of the board of trustees, withdrawals or payments to the depositor or his representative to be “ paid from the deposits in the State or Territory, so far as the postal funds on deposit in such State or Territory may be sufficient for the purpose and so far as practicable from the deposits in the community in which the deposit was made.”
Before passing to a discussion of the regulations promulgated by the board of trustees to effectuate the purposes enumerated, it may be well to pause here and note that there was created by this act a trust with named trustees, the deposits to be held as trust funds and to be held within the State or community where the deposit was made, and the withdrawals or repayments to be made at the place of deposit and from deposits within the State or community. Interest was to be paid on the deposits, and as provided in the act interest was collected from the banks on the deposits held by them. No part of the fund, it will be observed, went into the Treasury of the United States or became the property of the United States. It was held in trust separate and apart from the funds of the Government. Such being the case the Secretary of the Treasury has no fund out of *88 which to pay the judgment of this court, as it is not payable out of any Government funds. The debt due on this deposit is not a liability of the United States payable out of its funds. It is payable out of the funds in the hands of the trustees, namely, the funds deposited under the postal savings system, and such regulations as they had promulgated as to withdrawals and conditions of payment.
While the act contained the following provision:
“ That the faith of the United States is solemnly pledged to the payment of the deposits made in postal savings depository offices, with accrued interest thereon, as herein provided,”
this clearly means that the faith of the United States is pledged to make good any deficiency in case there is a deficiency in the funds; but this does not mean that the United States can be sued by one of the depositors where there is no question about there being sufficient funds on deposit to meet the claim. The United States has nowhere in this act provided for a suit against it or consented to be sued. We might stop here with the conclusion that this court has not judicial power to give judgment. The contract involved is not with the United States. It is a contract providing that the depositor is to be paid out of the funds deposited under the postal saving system, and the act itself and the regulations promulgated in pursuance thereof are written into and became a part of the contract. Under the regulations the money received was deposited to the credit of the board of trustees. (See Finding IX.) The checks and drafts for payment were drawn against this account of the board of trustees.
The board of trustees and the Postmaster General had authority to make such regulations as they thought necessary and proper for the custody, deposit, investment, and repayment of the funds deposited. Such regulations were promulgated (Finding IX), which in this case would require that the money deposited and held on deposit in the State of Utah, upon the death of the depositor would be payable and would be paid only to the administrator of his estate duly appointed under the laws of the State of Utah. The only *89 person appearing in the record with such authority is the intervenor, George Mesich, the administrator. But the regulations required that the certificates, properly indorsed by the administrator, should accompany the evidence of administration. Unfortunately for the Utah administrator the certificates were in the possession of the California admin-istratrix, who made no effort to be appointed administratrix in Utah. As he had not presented them properly indorsed, with the record of his appointment in Utah as required by the regulations, he was told to get them. He tried to get them without taking legal proceedings and failed. He made no effort to get them by legal proceedings, but requested the Postmaster General to issue duplicate certificates on the ground that they were “ improperly withheld.”
A regulation of the United States Official Postal Guide, July, 1929, p. 100, section 10, provides:
“ If a postal savings certificate is lost, stolen, destroyed, or improperly withheld the depositor may obtain a duplicate through the depository postmaster.”
Thus the Postmaster General was confronted by this demand for duplicates and with the decision of the question whether these certificates were “ improperly withheld.” He has not decided that question. It is a question for him to decide under the regulations, and not this court. See Former Corporation v. United States, 66 C. Cls. 83. This court has no power to compel his decision of the case in favor of either one or the other of the claimants. The question whether the certificates were improperly withheld must be decided by him or some other tribunal than this court if he refuses to pay until it is decided.
As stated by Justice Story in Vaughan v. Northup, 15 Pet. 1, in delivering the opinion of the court—
“ * * * debts due from the Government of the United States have no locality at the seat of government. The United States, in their sovereign capacity, have no particular place of domicile, but possess, in contemplation of law, an ubiquity throughout the Union; and the debts due by them are not to be treated like the debts of a private debtor, which constitute local assets in his own domicile.” *90 And so it was held there that the administrator of a creditor of the Government, appointed by the State where he was domiciled at the time of his death, has authority to receive payment of the debt due the decedent and give full discharge. But that is not this case. The ubiquity of the United States does not come into this case. Here the fund is eircumscript. The fund here in the first place is not a fund of the Government; that is, property of the United States Government. It is a trust fund, and by the act creating the postal savings system the fund received on deposit has been localized and its situs fixed at or near the place and in the State where received, and is payable in that State at the post office where deposited. The act localized this fund and the localization is further hedged about by the regulations which the trustees have authority to make. Its situs is in the State of Utah. It therefore becomes unnecessary for this court to decide whether the administrator of the State of Nevada or the administratrix of the State of California is the domiciliary administrator. Under the regulations no one but an administrator appointed by the State of Utah can collect the fund.
The fund or deposit of which the certificates were merely the evidence had its .permanent situs in the State of Utah under the provisions of the act, and was under the control of the laws of that State and collectible by an administrator appointed by the courts of that State, if an administrator had been appointed. In this case he has been appointed. Even if the administratrix appointed by the State of California was a domiciliary administratrix, the grant of admintration would be confined in its authority and operation to the limits of California and would not extend de jure to other States. In this case the administrator of the State of Utah would have control of the local assets in the latter State as against the domiciliary administrator. Vaughan v. Northup, supra. Compare Safe Deposit & Trust Co. of Baltimore v. Commonwealth of Virginia, 280 U. S. 83. So that an administrator having been appointed in the State of Utah and the money being on deposit and having its permanent situs in that State and by the law payable at the post office in that State, the mere possession of the certificates, the evidence of the deposit by the administrator’s *91 decedent, would not be a controlling consideration, and if the party in possession refused to surrender the certificates, she did in this case, to the administrator for the State •of Utah, it would be a case of “ improperly withholding ” .them. The regulations which were a part of the contract with the decedent, and which control as a part of that contract, provide the method of payment, and this method required, in the case of the death of the depositor, payment -to be made to the administrator of the State where the fund was deposited, and under these regulations the administrator Utah would be entitled to collect the fund and he would 'be entitled to possession of the certificates. If delivery to him by the one who had them was refused, it would be a -case of “ improperly withholding ” them, and under the regulations of the Postmaster General he would be justified in issuing duplicates and. paying the money to the Utah .administrator.
But, as stated at the outset of this opinion, it is not a •case in which judgment could be entered against the United .States. The Secretary of the Treasury has no fund out -of which to pay the sum, and it is not payable under the act out of any funds belonging to the United States Government, but out of the deposits held by the board of trustees.
Both the petition of the plaintiff and the petition of the "intervenor should be dismissed, and it is so ordered.
Williams, Judge-; LittletoN, Judge; Geeen, Judge; and Booth, GMef Justice, concur.

 500 (500) POSTAL SAVINGS SYSTEM (500) 600 The faith of the UNITED States of America
IS SOLEMNLY PLEDGED TO THE PAYMENT OF DEPOSITS WITH ACCRUED INTEREST
Act of June 25,1910 'Bingham Canyon, Utah Depository office Mike Masich Name of depositor 1522 Serial number Nov. 12,1920 Date of issue SEAL
1949 Account number Not transferable Not negotiable ■500 (500) Dec. 1,1920 Date when interest begins (FIVE HUNDRED DOLLARS) This certifies that the sum of Five Hundred Dollars has been deposited with the Postal Savings System and will be payable to the Depositor at the above named depository office Series with interest at the rate of two per cent per annum payable of annually on the presentation of this certificate properly in- 1918 dorsed (500) 500 A. S. Burleson, Postmaster General.
[On the back of each of the certificates is the following:] Received the amount of this certificate and $-interest due thereon. The depositor must not receipt this certificate until it is presented at the post office for .payment. Information for Depositor
1. Before accepting this certificate the depositor must see that the amount for which it is issued is correct. 2. If this certificate is lost, the depositor should immediately notify the postmaster at the post office where issued. 3. Certificates begin to draw interest from the first day of the month following the month in which issued. 4. The postmaster will stamp in the spaces below the dates on which annual interest payments are made, deferred payments •covering two or more years to he stamped separately in the spaces provided for the several .years.
Number of years Total accrued interest Interest accruing annually Dates of annual interest payments of ten dollars each
1__ $10.00 $10.00
2__ 20.00 10.00
3.. 30.00 10.00
4— 40.00 10.00
5— 50.00 10.00
6_ 60.00 10.00
7_ 70.00 10.00
8-_ 80.00 10.00
9__ 90.00 10.00
d0_ 100.00 10.00