Henry ARMSTRONG, Administrator of the Estate of Ella Armstrong, Deceased, Plaintiff, Appellant,

v.

UNITED STATES of America, Defendant,

v.

Carrie HOLMES and Sarah Duhart, Third-Party Defendants.

No. 13196.

United States Court of Appeals Third Circuit.

Argued June 24, 1960.

Decided Oct. 12, 1960.

Jerome E. Furman, Philadelphia, Pa., for appellant.

Joseph J. Zapitz, Asst. U. S. Atty., Philadelphia, Pa. (Walter E. Alessandroni, U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before McLAUGHLIN, KALODNER and STALEY, Circuit Judges.

KALODNER, Circuit Judge.

Plaintiff, Henry Armstrong, Administrator of the Estate of Ella Armstrong, deceased, brought suit against the United States seeking payment of $1,-400 [1] which the deceased had deposited during her lifetime in the Postal Savings System. The United States filed a third-party complaint against Sarah Duhart and Carrie Holmes, sisters of the deceased, premised on their receipt of the $1,400 from the Postal Savings System. The $1,400 had been paid to Sarah pursuant to a withdrawal order [2] executed by the deceased during her lifetime. Sarah, it appears had given $400 of the sum which she received to Carrie.

The District Court for the Eastern District of Pennsylvania, after trial, directed entry of judgment for the United States on the merits.[3] The issues raised by the third-party complaint against the sisters of the deceased were declared moot. The Opinion of the District Court, making detailed Findings of Facts and stating Conclusions of Law, is

reported at 171 F.Supp. 835 (D.C.E.D. Pa.1959).

Only the facts stated are critical to our disposition inasmuch as they establish that the District Court lacked jurisdiction to entertain the action against the United States and should have dismissed it for that reason.

■■ It is true that United States in its Answer to the plaintiff's Amended Complaint admitted jurisdiction, but it is settled that the United States Attorney has no power to waive jurisdictional requirements with respect to suits against the United States or to consent to such a suit. Munro v. United States, 1938, 303 U.S. 36, 39, 58 S.Ct. 421, 82 L.Ed. 633. It is also settled, that although the jurisdictional issue has not been raised by the United States on this appeal, we must consider the statutory requirements for maintaining an action against the United States, since, as we said in Rodinciuc v. United States, 1949, 175 F.2d 479, 481, certiorari denied 338 U.S. 895, 70 S.Ct. 234, 94 L.Ed. 550:

"A clear failure to comply with the conditions laid down by statute for suits against the United States may not be waived."

Anent the foregoing the plaintiff in Paragraph 1 of his Amended Complaint averred:

"This action relates to the Postal Savings System, and jurisdiction is founded upon the existence of questions arising under provisions of Act of June 25, 1948 c 646 62 Stat. 933 as amended, 28 U.S.C.A. 1346 (a) known as the Tucker Act, and under provisions of Act of August 24, 1912, c 389 Par. 10, 37 Stat. 559, 39 U.S.C.A. 768, and the Postal Laws and Regulations."

In Para. 3 of his Amended Complaint plaintiff averred:

Authorization to Postmaster to Pay Principal and Interest to a Representative."

---

1. Plus accumulated interest of $7.00.

2. The withdrawal order was Post Office Form P.S. 304 captioned "Depositor's

3. The case was tried to the Court without a jury.

"The Defendant is the United States of America acting at the times complained of by and through the Postal Savings System of the United States Post Office Department, *a duly authorized and properly constituted Executive Department of said Defendant.*" (Emphasis supplied.)

The United States in its Answer stated in its "Second Defense":

"The United States of America admits the allegations contained in paragraphs 1 and 3. * * *"

The Tucker Act provides in relevant part:

"(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

"(1) * * *

"(2) Any other *civil action or claim against the United States,* not exceeding $10,000 in amount, founded either upon the Constitution, or *any Act of Congress, or any regulation of an executive department,* or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." (Emphasis supplied.)

■ It is apparent from the plain terms of the Tucker Act that in order for the plaintiff to maintain his action it was incumbent on him to establish that it was founded on an "Act of Congress" or "any regulation of an executive department" of the United States, "or upon any express or implied contract with the United States" since it was not premised "upon the Constitution." Assuming that the plaintiff was relying on the Federal Tort Claims Act, 28 U.S.C. § 1346(b), although he had not in fact pleaded it as a basis for jurisdiction, it was also incumbent on him to establish liability on the part of the United States.

The Postal Savings Bank Act of June 25, 1910, c. 386, § 1, 36 Stat. 814; as amended, August 24, 1912, c. 389, § 10,

37 Stat. 559; September 23, 1914, c. 308, 38 Stat. 716 and August 14, 1958, P.L. 85–634, 72 Stat. 589,[4] creates "*a board of trustees for the control, supervision, and administration of the postal savings depository offices* designated and established under the provisions of this Act *and of the funds received as deposits* at such postal savings depository offices by virtue thereof" (emphasis supplied) and contains nothing which would afford a premise for plaintiff's contention that the board of trustees was "a duly authorized and properly constituted Executive Department of the United States", as alleged by the Amended Complaint (para. 1).

In the leading case of Leka v. United States, 1930, 69 Ct.Cl. 79 it was expressly held that a debt due on a deposit in the postal savings system "is not a liability of the United States payable out of its funds" and that "The United States has nowhere in this act provided for a suit against it or consented to be sued."

In United States v. Stewart, 9 Cir., 1941, 119 F.2d 492, 493, it was held that Congress has not authorized suit against the United States in the Postal Savings Bank Act of 1910, and that "the money [deposited in the postal savings system] is not the property of the United States nor of the Post Office Department."

In Bell-Dowlen Mills v. Draper, 1935, 169 Tenn. 112, 83 S.W.2d 247, 248 it was said: "The Acts of Congress creating this federal instrumentality [the Postal Savings System] contain nothing authorizing suits against it."

It would serve no useful purpose to analyze anew the provisions of the Postal Savings Act since such analysis could add nothing to that so excellently made in the Leka case.

We need but quote from the pertinent summary of that analysis (69 Ct.Cl. at pages 87–88):

"* * * there was created by this act a trust with named trustees, the deposits to be held as trust funds and to be held within the State or

4. 39 U.S.C.A. § 751 et seq.

community where the deposit was made, and the withdrawals or repayments to be made at the place of deposit and from deposits within the State or community. Interest was to be paid on the deposits, and as provided in the act interest was collected from the banks on the deposits held by them. No part of the fund, it will be observed, went into the Treasury of the United States or became the property of the United States. It was held in trust separate and apart from the funds of the Government. Such being the case the Secretary of the Treasury has no fund out of which to pay the judgment of this court, as it is not payable out of any Government funds. The debt due on this deposit is not a liability of the United States payable out of its funds. It is payable out of the funds in the hands of the trustees, namely, the funds deposited under the postal savings system, and such regulations as they had promulgated as to withdrawals and conditions of payment.

"While the act contained the following provision:

" 'That the faith of the United States is solemnly pledged to the payment of the deposits made in postal savings depository offices, with accrued interest thereon, as herein provided,'

"this clearly means that the faith of the United States is pledged to make good any deficiency in case there is a deficiency in the funds; but this does not mean that the United States can be sued by one of the depositors where there is no question about there being sufficient funds on deposit to meet the claim. The United States has nowhere in this act provided for a suit against it or consented to be sued. We might stop here with the conclusion that this court has not judicial power to give judgment. The contract involved is not with the United States. It is a contract providing that the depositor is to be paid out of the funds deposited under the postal saving system, and the act itself and the regulations promulgated in pursuance thereof are written into and become a part of the contract."

We need only say that we are in accord with the view expressed in the Leka and Stewart cases, supra.

It may be pointed out that Reorganization Plan No. IV, 54 Stat. 1234, 5 Fed. Reg. 2421, effective June 30, 1940, 5 U.S.C.A. § 133t note, expressly carved out of the Treasury Department "all functions relating to the disbursement of * * * funds under jurisdiction of * * * the Board of Trustees of the Postal Savings System" and vested them in the Board.

Reorganization Plan No. IV provides in pertinent part as follows:

"All functions relating to the disbursement of * * * funds under the jurisdiction of * * * the Board of Trustees of the Postal Savings System which would otherwise become functions of the Treasury Department on July 1, 1940 * * * are transferred to and vested in (a) the Board of Trustees of the Postal Savings System as to postal savings disbursements. * * * "

Although not necessary to our disposition this may well be said so as to make it clear that depositors in the postal savings system are not without remedy with respect to asserted rights of their deposits.

Section 17 of the Postal Savings Act of 1910 (39 U.S.C.A. § 767) provides in pertinent part as follows:

"The final judgment, order, or decree of any court of competent jurisdiction adjudicating any right or interest in the credit of any sums deposited by any person with a postal savings depository if the same shall not have been appealed from and the time for appeal has expired shall, upon submission to the Postmaster General of a copy of the same, duly authenticated * * *

be accepted and pursued by the board of trustees as conclusive of the title, right, interest, or possession so adjudicated * * *."

■ As the Ninth Circuit indicated in United States v. Stewart, supra, 119 F. 2d at page 493, this section suggests that the proper place to prosecute rival claims of private parties to postal savings deposits is in the appropriate state courts, or we might add, in the federal district courts when the jurisdictional requirements are met. Such a procedure should be followed prior to presenting a claim to the board of trustees. The state reports are certainly not lacking in precedent for such a procedure. See Vinson v. Vinson, 1951, 256 Ala. 259, 54 So.2d 509, on subsequent appeal, 1955, 262 Ala. 388, 79 So.2d 31; Blair v. Kirchner, 1943, 319 Ill.App. 348, 49 N.E.2d 292.

For the reasons stated the cause will be remanded with directions to the District Court to vacate its Order of Judgment dated March 23, 1959 and to dismiss the Amended Complaint for want of jurisdiction.[5]

STALEY, Circuit Judge (dissenting).

I must respectfully dissent from the majority holding that the court is without jurisdiction. My reasons are as follows.

Section 751 of 39 U.S.C.A. clearly excepts from its provisions certain powers which are specifically given to the Postmaster General by 39 U.S.C.A. § 768, which provides as follows:

"Powers of Postmaster General as to designation of offices, compensation of superintendents and inspectors, office hours, and *regulations as to deposits and withdrawals*. The Postmaster General shall select and designate the post offices which are to be postal savings depository offices, and shall appoint and unless otherwise provided by law, fix the compensation of such superintendents, inspectors, and other employees as may be necessary in conducting, supervising, and directing the business of such offices, including the employees of a central office at Washington, District of Columbia, and shall prescribe the hours during which postal savings depository offices shall remain open. *He shall also from time to time make rules and regulations with respect to the deposits in and withdrawals of moneys from postal savings depositories and the issue of pass books or such other devices as he may adopt as evidence of such deposits or withdrawals*." (Emphasis supplied.)[1]

Under this section the Postmaster General, it seems to me, is the one who is clearly empowered to enter into the contract of deposit with the depositor, covering his deposits and withdrawals. In addition, the United States is pledged to pay the deposits, and it also receives all profits from the operation. 39 U.S.C.A. §§ 759, 766;[2] Farley v. Albers,

---

5. It is of interest to note that the Attorney General of the United States in an Opinion directed to the Postmaster General, dated August 4, 1923, Vol. 33, Opinions of Attorneys General, p. 526, advised that where payment was erroneously made by a postal employee to the forger of postal savings certificates, no authority exists, either on the part of the Postmaster General or the Board of Trustees of the Postal Savings System to relieve the erring postal employee from personal liability.

1. See United States Government Organization Manual 1960–1961, pages 230–231;

and Letter of Deputy Postmaster General, dated April 19, 1957, contained in 2 U.S.Code Cong. & Adm.News, 85th Cong., 2d Sess., 1958, pages 3508–3509.

2. "Faith of United States pledged to payment of deposits. The faith of the United States is solemnly pledged to the payment of the deposits made in postal savings depository offices, with accrued interest thereon as provided in sections 751–756, 757–764, and 766–767 of this title." 39 U.S.C.A. § 766.

It is inconceivable to me that this in and of itself does not constitute a contract

1940, 72 App.D.C. 136, 112 F.2d 401. That case also is authority for the proposition that the United States is an indispensible party to any action involving the fund.[3]

Since the contract is one made with the Postmaster General under the clear authority of Section 768 of 39 U.S.C.A., by virtue of the Act of June 25, 1948, c. 646, 62 Stat. 933, as amended, 28 U.S.C. § 1346(a), known as the Tucker Act, it is enforcible against the United States in an action brought in a United States district court.[4]

The majority cite the cases of Leka v. United States, 1930, 69 Ct.Cl. 79, and United States v. Stewart, 9 Cir., 1941, 119 F.2d 492. It may be pointed out that Leka was decided in 1930 and Stewart in 1941. In neither of these cases was jurisdiction asserted under the provisions of the Tucker Act, supra. Lastly, the United States Attorney, on behalf of the United States, has filed a supplemental brief contending that there is jurisdiction in the district court and for the very reasons set forth herein.

On the merits, I would reverse. I need not express my reasons therefor at this time as the majority has not reached this issue.

---

between the United States and a depositor.

3. The majority contends that under Reorganization Plan No. IV, 54 Stat. 1234, 5 Fed.Reg. 2421, effective June 30, 1940, certain functions were transferred to the Board of Trustees. I need only note that Section 768, which granted specific powers to the Postmaster General, was re-enacted in 1958. In any event, I think that the Board of Trustees of the Postal Savings System is as much a part of the Executive Branch of the government as is the Postmaster General, and thus its regulations and directives are also embraced by the provisions of the Tucker Act, 28 U.S.C. § 1346(a).

4. The Postal Savings Depositories Act provides that deposits for any one person under the Act may not exceed $2500. Thus, it would appear that most of these depositors are people of limited means. The majority opinion would relegate a depositor for the recovery of his deposit to the State courts in those cases where, as here, the deposit has been improperly paid out to a third person. The difficulty of framing an issue and the technical procedures which obtain in most States would result in great expense to the depositor for the recovery of the money which rightfully belongs to him. It is clear, after a reading of the entire Act, that Congress never intended that such be the case.