**UNITED STATES of America,
Plaintiff,**

v.

**Max B. COHEN et al., Defendants.**

**Civ. No. 66–1496.**

United States District Court
S. D. Florida.

July 13, 1967.

710

Lavinia L. Redd, Asst. U. S. Atty., Miami, Fla., and Harry Shapiro, Trial Atty. for Dept. of Justice, Washington, D. C., for the Government.

Arnold D. Levine, Tampa, Fla., and Robert E. Manuel, Washington, D. C., for defendant Max B. Cohen.

Sibley, Giblin & Levenson, Miami Beach, Fla., for defendant Fontainebleau Corp.

Burns, Middleton, Rogers & Farrell, Palm Beach, Fla., for defendants Elwyn Middleton and Annie Middleton.

Clinton A. Curtis, Lake Wales, Fla., for defendant Corneal B. Myers.

Richard & Nelson, Miami Beach, Fla., for defendant Theodore Nelson.

Jack Geddy Goldberg, Jersey City, N. J., pro se.

Bernard A. Wieder, Miami Beach, Fla., pro se.

Philena C. Cohen, pro se.

## ORDER

FULTON, Chief Judge.

This cause came on to be heard before the Court upon the Government's Motion for Partial Summary Judgment on the issue of priority of liens as between the Government and the Defendant, Fontainebleau. The Court has heard argument of counsel, has carefully studied the memoranda of law and pleadings filed herein, as well as the affidavit submitted by the Government in support of said motion, and is otherwise fully advised in the premises.

By virtue of a contract of purchase and sale between defendant Middleton as Trustee and defendant Myers dated September, 1962, and the consummation of that transaction, defendant Cohen, the taxpayer herein, has owned a beneficial interest in a mortgage indebtedness owed by defendant Myers to defendant Middleton as Trustee. Middleton, a resident of Palm Beach County, Florida, holds this indebtedness for the benefit of Cohen and others. The mortgage covers property situate in Citrus and Levy counties, and it is Cohen's interest in this indebtedness upon which the Government now claims and seeks foreclosure of its tax lien.

As Judge Gewin of the Court of Appeals for the Fifth Circuit observed when confronted with a similar problem,

This is a case in which the Government is diligently pursuing the taxpayer in an effort to satisfy tax liens for delinquent taxes, penalties and interest; but in doing so, it is challenged by others who claim to be innocent bystanders, admitting the right of the Government to collect, but contending that they are being seriously injured by the procedure, and that their property rights are being jeopardized to satisfy tax liens against another. The case therefore, is drawn down to the narrow margin that sometimes arises between the rights of the Government to have its taxes paid and its liens satisfied, and the rights of individuals who do not owe the tax but who claim they are being injured by the efforts of the Government to collect. Folsom v. United States, 306 F.2d 361 (5th Cir. 1962.)

The facts which gave rise to this controversy are not disputed. According to Cohen's uncontroverted affidavit, from September, 1963 to December, 1964, he was a domiciliary and resident of Manatee County, Florida, and from December, 1964 to October, 1965, he was a domiciliary and resident of Dade County,

Florida. He has never resided in Citrus, Levy or Palm Beach counties, Florida.

Inasmuch as the chronology of the accrual and recording of the Government and Fontainebleau liens are the crux of this litigation, these undisputed facts are probably most clearly set forth in time-line fashion.

May 12, 1961 District Director of the Internal Revenue Service made an assessment of income tax liability of defendant, Max Cohen, in the amount of $83,639.48, of which a balance remains due of $39,415.40.

September 7, 1961 District Director caused notice of tax lien, based on the first assessment, to be filed with the Clerk of the Manatee County Circuit Court.

September 8, 1961 District Director caused notice of tax lien based on the first assessment to be filed with the Clerk of the Dade County Circuit Court.

July 14, 1963 District Director of the Internal Revenue Service made a second assessment of income tax liability of defendant, Max Cohen, in the amount of $257,732.38.

September 5, 1963 District Director caused notice of tax lien based on the second assessment to be filed with the Clerk of the Manatee County Circuit Court. Notice of tax lien based on both assessments was filed with the Clerk of the Citrus County Circuit Court.

October 23, 1963 District Director caused notice of tax lien based on both assessments to be filed with the Clerk of the Hillsborough County Circuit Court.

October 24, 1963 District Director caused notice of tax lien based on the second assessment to be filed with the Clerk of the Dade County Circuit Court.

October 30, 1963 District Director caused notice of tax lien based on both assessments to be filed with the Clerk of the Levy County Circuit Court.

April 20, 1965 The Defendant Fontainebleau Hotel Corp. obtained a personal judgment against the defendant-taxpayer Max Cohen in the Dade County Circuit Court.

April 22, 1965 Fontainebleau Hotel Corp. recorded that judgment in Citrus County.

July 26, 1965 Execution having been returned nulla bona, Fontainebleau Hotel Corp. filed a complaint in the nature of a creditors bill in the Citrus County Circuit Court, seeking to reach Cohen's beneficial interest in the Myers-Middleton mortgage.

November 17, 1965 The Citrus County Circuit Court issued a temporary stay order, enjoining Cohen from encumbering or transferring any funds held by Middleton as trustee for Cohen's benefit.

December 17, 1965 District Director caused notice of tax liens based on both assessments to be filed with the Clerk of the Palm Beach County Circuit Court.

May 18, 1966 The Fontainebleau Hotel Corp. obtained a final decree in its Citrus County creditors suit, which decree declared Fontainebleau's lien on Cohen's equity in the mortgage indebtedness. Cohen's interest was ordered to be sold by a special master.

Thereafter, but prior to the sale of Cohen's interest in the mortgage indebtedness, the Government attempted to intervene in the Citrus County Circuit Court proceedings. The intervention was strenuously and successfully opposed by Fontainebleau, on the grounds that (1) the Fontainebleau's final decree in the creditors suit in no way affected the Government's rights because the Government could maintain a separate and independent suit to test the priority of its claim as against Fontainebleau, (2) intervention after the final decree was not timely, and (3) the proposed intervention was not subordinate to and in recognition of the propriety of the main proceedings, as required by the Florida Rules of Civil Procedure, 30 F.S.A.

Cohen's beneficial interest in said mortgage was sold at public outcry, pursuant to the Citrus County Circuit Court final decree. For the price of $50,000, Fontainebleau purchased Cohen's interest in the mortgage, the purchase price being applied towards satisfaction of Fontainebleau's judgment against Cohen.

After being thwarted in its Citrus County attempt to reach Cohen's interest in said mortgage, the Government filed its complaint herein. Plaintiff now seeks a judgment against Cohen in the amount of the two unpaid assessments, foreclosure of its tax liens on Cohen's equitable interest in the mortgage, sale of that interest, and if appropriate, a deficiency judgment against Cohen for the balance.

The taxpayer in his answer admits his indebtedness to the Government and not only asserts that the tax liens are prior to any other liens claimed by defendants to this cause, but joins in the Government's prayer for relief. Fontainebleau raises the following defenses to foreclosure of the Government's lien:

1. Priority of Fontainebleau's lien or interest as purchaser.
2. Estoppel by judgment, arising by virtue of the Government's failure to appeal the denial of its petition for intervention and the final judgment in the Citrus County creditors suit.
3. Release of its claim of lien by the Government.

By way of counterclaim, Fontainebleau asks this Court to marshal all of Cohen's assets subject to the Government's tax lien in accordance with equity and good conscience.

## I. THE GOVERNMENT'S LIEN

■ 26 U.S.C. § 6321 creates a lien in favor of the Government on "all property and rights to property, whether real or personal" belonging to a taxpayer who, after demand, neglects or refuses to pay his income tax. Whether the taxpayer has an interest in property to which a lien can attach is a matter of state law. United States v. Bess, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958). That the Government has made demand, and Cohen has neglected or refused to pay his income tax is uncontroverted.

■■ In the instant case, the Government seeks to levy upon its tax lien imposed on the taxpayer-Cohen's interest in said mortgage indebtedness. Florida law determines whether this interest is "property" or a "right to property" within the meaning of § 6321, and under Florida law, an equitable interest in a mortgage is intangible personal property, which may be reached by a creditor. Evins v. Gainesville National Bank, 80 Fla. 84, 85 So. 659 (1920); Ratliff v. Nowery, 102 Fla. 1072, 136 So. 895 (1931); Thalheimer Bros. v. Tischler, 55 Fla. 796, 46 So. 514, 17 L.R.A.,N.S., 841 (1908). Thus it may be subject to a tax lien.

## II. PRIORITY AS BETWEEN THE GOVERNMENT AND FONTAINEBLEAU

■ The tax lien created by § 6321 arises automatically upon the ripening of the taxpayer's tax liability and attaches to all property and rights to property then owned and subsequently acquired by the taxpayer. Once the tax lien has attached to the taxpayer's property or rights to property, Federal law determines the priority of competing liens asserted to that interest. Aquilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960). However, in order to enforce its lien as against certain persons designated in the statute, the Government must first give notice of its lien.

■ Thus under § 6323, the lien created by § 6321 shall not be valid as against any purchaser or judgment creditor until proper notice is filed by the Secretary of the Treasury or his delegate. Before § 6323 was amended in November, 1966, it had been held that a "judgment creditor" for purposes of that statute had to be a judgment *lien* creditor, for until the state-created lien

became choate in the Federal sense, it had no protection against a recorded tax lien. Fore v. United States, 339 F.2d 70 (5th Cir. 1964). This requirement has been confirmed and made statutory by the 1966 amendment, which imposes upon the Government the duty of giving notice as against judgment *lien* creditors in order to enforce its tax lien. So, § 6323 protects a creditor against a tax lien only when the creditor's judgment becomes a specific lien against the property to which the tax lien has attached.

The notice required by § 6323 is to be filed under state laws in the office in the state, county, or other governmental subdivision in which the property subject to the lien is situated, designated by the laws of that state. § 28.20, Florida Statutes, F.S.A., designates the office of the clerk of the circuit court for the filing of federal tax liens.

The 1966 amendment to § 6323 specifies that real property is deemed to be situated at its physical location, and personal property, whether tangible or intangible, is deemed to be situated at the residence of the taxpayer at the time the notice of lien is filed. The taxpayer is the person whose tax liability is the basis for the lien and against whose property the lien is imposed, in this case being the defendant Max Cohen. The committee report concerning this amendment indicates that the provision was designed to clarify already existing law. Most courts had already held that the filing of a tax lien imposed on the taxpayer's personal property was valid when filed at the taxpayer's domicile.

§ 114 of Public Law 89–719, 80 Stat. 1125 provides that this amendment shall apply after the date of enactment (November 2, 1966), regardless of when a lien of the United States arose or when the lien or interest of any other person was acquired. However, the amendment shall not apply in any case in which its application would impair a priority enjoyed by a person other than the United States holding a lien or interest prior to the date of enactment. As will be seen, application of § 6323 both before and

after the amendment yields the same result in this case.

██ Applying § 6323 as amended in November, 1966, the situs of Cohen's beneficial interest in this mortgage, which is intangible personal property, is his residence at the time the notice of lien was filed. The uncontroverted affidavit of defendant Cohen states that he was a resident of Manatee County on September 5, 1963, when notice of tax lien based on the second assessment was filed with the Clerk of the Manatee County Circuit Court. Notice of lien based on the first assessment had previously been filed in that county. Thus, the Government's lien based upon both assessments attached to this property on September 5, 1963, prior to Fontainebleau's obtaining its judgment against Cohen. Thus, the Government's lien, based on both assessments, is prior to any interest the Fontainebleau may have in said property. Although Cohen later moved his residence from Manatee, a lien once properly filed remains valid against judgment creditors and purchasers even if the taxpayer later severs all connection with his former residence. § 6323(f) (2) (B); Grand Prairie State Bank v. United States, 206 F.2d 217 (5th Cir. 1963).

██ Even applying the former § 6323 and case law thereunder, the result is still the same. Case law had established that the situs of intangible personal property was the domicile of its owner. See Campbell v. Bagley, 276 F.2d 28 (5th Cir. 1960); United States v. Goldberg, 362 F.2d 575 (3rd Cir. 1966); and cases cited therein. Under Florida law, a mortgage is a specific lien on property and thus is a chose in action, Evins v. Gainesville National Bank, 80 Fla. 84, 85 So. 659 (1920); Ratliff v. Nowery, 102 Fla. 1072, 136 So. 895 (1931) which is intangible personal property, Vogel v. New York Life Insurance Co., 55 F.2d 205 (5th Cir. 1932). The same holds true of an equitable interest in a mortgage. Thus, under the former § 6323 the notice required of the Government still had to be filed in the

county in which Cohen was domiciled, again being Manatee County in 1963.

It is the taxpayer, Cohen's domicile which is critical in this case, for it is Cohen's equitable interest in the mortgage which is sought to be subjected to the Government's lien here, and to which Fontainebleau claims a prior right, and not the Trustee's legal interest in said mortgage. The domicile of the Trustee-holder of *legal* title to the mortgage indebtedness is irrelevant for this purpose of determining whether *Cohen's beneficial interest* is to be subject to the Government's lien.

So under either the former § 6323 or the November, 1966 amendment, the Government's lien based on the second assessment is still prior to Fontainebleau's interest as a judgment *lien* creditor and its later interest as a purchaser.

■ Even assuming Fontainebleau's premise that the Government had to record its lien on Cohen's beneficial interest in said mortgage in Palm Beach County, where the Trustee resides, Fontainebleau must still be subordinated to the Government lien.

Until Fontainebleau obtained its judgment against Cohen, it could not assert any priority as against the Government. Even though as a judgment creditor it had an immediate lien on Cohen's real property located in Florida, § 55.08, Florida Statutes, F.S.A., it had to take further steps to establish a lien on Cohen's intangible personal property, by bringing an equitable action in the nature of a creditors bill and obtaining a decree therein.

■ Although § 6323 before amendment imposed the notice requirement upon the Government as against a taxpayer's "judgment creditors," the courts had interpreted that language to mean "judgment *lien* creditors." Determination of whether a creditor attains this status is reached first by reference to state law to ascertain the effect of the judgment as a lien on the taxpayer's property, and then by reference to federal standards to ascertain whether the state-created lien is "choate," specific and perfected for purposes of § 6323. United States v. Equitable Life Assurance Society, 384 U.S. 323, 86 S.Ct. 1561, 16 L.Ed.2d 593 (1966); United States v. Pioneer American Insurance Co., 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1964); 9 Mertens § 54.42 at pg. 105 and cases cited therein.

The leading case, which led to amendment of the statute to recite the "judgment *lien* creditor" requirement is Fore v. United States, 339 F.2d 70 (5th Cir. 1964). Fore had obtained a Texas judgment, which under Texas law entitled him to a lien on the debtor's Texas real estate but not to a lien on the debtor's personalty located in Texas. Inasmuch as under Texas law, Fore had no possessory lien, attachment lien or execution lien on the debtor's personalty, his lien was not choate in the Federal sense.

■ Similarly, under Florida law, Fontainebleau's judgment on the note constitutes a lien against Cohen's realty located in Florida. However, a judgment at law is not a lien on land to which the judgment debtor has no legal title. Equitable interests in property are ordinarily not subject to levy and sale under writ of execution in Florida; they must either be reached by supplemental proceedings or by creditors suit. Huttig v. Huffman, 151 Fla. 166, 9 So.2d 506 (1942). Furthermore, a mortgage on real estate, being a contract lien on the land, is not subject to levy and sale under writ of execution, and must likewise be reached by supplemental proceedings or by creditor's suit. Evins v. Gainesville National Bank, 80 Fla. 84, 85 So. 659 (1920); Ratliff v. Nowery, 102 Fla. 1072, 136 So. 895 (1931). Under Federal concepts a lien is not perfected if its existence, amount or enforcement is contingent upon the outcome of a suit. United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264; United States v. Security Trust and Savings Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950).

State-created liens are perfected or choate for priority purposes when the identity of the lienor, the property subject to the lien, and the amount of the lien are established. United States v. Pioneer American Insurance Co., 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed. 2d 770 (1964); Regulations § 301.6323 (1)(a) (2). Whether Fontainebleau's judgment on the note against Cohen constituted a lien on his beneficial interest in said mortgage was not determined under state law until Fontainebleau obtained its decree in its Citrus County creditors suit. It was only when that decree was entered that the property subject to Fontainebleau's judgment lien was determined, and thus it was only when that decree was entered that Fontainebleau's judgment became choate in the Federal sense and Fontainebleau became a judgment lien creditor for purposes of § 6323. This was on May 18, 1966 and the Government had previously recorded its notice in Palm Beach County on December 17, 1965.

Subject to the § 6323 notice requirement, the transfer of property subject to a tax lien *subsequent* to the attachment of that lien does not affect the tax lien, for it is the very nature and essence of a lien that no matter into whose hands the property goes, it passes *cum onere*. United States v. Bess, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958). Michigan v. United States, 317 U.S. 338, 63 S.Ct. 302, 87 L.Ed. 312 (1943). The taxpayer's lien liability is based upon the Government's claim on the property of the taxpayer until the tax debt is discharged and the property passes into the hands of a subsequent party subject to the lien regardless of the transferee's status as a creditor or purchaser. Exhaustion of remedies against the taxpayer and the taxpayer's insolvency or solvency are irrelevant in a proceeding to enforce a Government tax lien. United States v. Hoper, 242 F. 2d 468 (7th Cir. 1957). So the transfer of Cohen's equitable interest in said mortgage to Fontainebleau by judicial sale after the tax lien based on the second assessment attached thereto did not affect the already established priority of the federal tax lien.

The United States may be named a party in a state mortgage or lien foreclosure suit. However, if the Government is not made a party to a suit concerning property which is subject to an income tax lien, then

* * * a sale to satisfy a lien *inferior* to one of the United States shall be made subject to and without disturbing the lien of the United States, unless the United States consents that the property may be sold free of its lien and the proceeds divided as the parties may be entitled. 28 U.S.C. § 2410.

In the instant case, the Government gave no such consent to the sale following Fontainebleau's suit in the Citrus County Circuit Court, so that the sale was subject to the Government's lien.

### III. MARSHALING ASSETS

By way of counterclaim, Fontainebleau has asked the Court to marshal Cohen's other assets and use Cohen's other assets to satisfy the Government's tax lien, leaving Cohen's interest in the Myers-Middleton mortgage to the Fontainebleau.

The equitable doctrine of marshaling rests on the principle that a creditor having two funds to satisfy his debt, may not by his application of them to his demand, defeat another creditor who may resort to only one of the funds. Meyer v. United States, 375 U.S. 233, 84 S.Ct. 318, 11 L.Ed.2d 293 (1963).

In United States v. Pollack, 233 F. Supp. 775, a New York District Court did use a marshaling type approach where two sources existed for satisfaction of a tax lien and a junior creditor had resort to only one of those sources. The Court stayed the lien foreclosure proceedings directed at the assets which was subject to the lien of the junior creditor pending the outcome of other

Government lien foreclosure proceedings directed at the taxpayer's other assets.

The Supreme Court has not yet been faced with a case in which marshaling was sought against the federal government in an income tax case, although it was asked by the Government to apply the doctrine in Meyer v. United States, supra.

In *Meyer,* the Government had sought to impose and foreclose a tax lien upon the proceeds of life insurance policies which insured the life of the taxpayer. A bank had a senior lien on the entire proceeds of the policies, while the Government's tax lien attached only to the cash surrender value of the policies, subject to the bank's claim. The Government invoked the doctrine of marshaling assets, asking the Court to satisfy the tax lien from the cash surrender value and the bank's claim from the remainder of the proceeds.

After citing lower court cases holding that the doctrine will not be applied where state-created exemptions would thereby be destroyed or where one of the funds is exempt under state law, the Supreme Court adopted the state rules and refused to extend the doctrine to this situation. New York has a statute exempting insurance benefits of a widow from the claim of her husband's creditors, so that the proceeds other than the cash surrender value were not subject to the tax lien. The Supreme Court refused to enlarge the statutory lien by application of the doctrine of marshaling assets.

Lower federal courts have been confronted with situations where creditors of the taxpayer have invoked the doctrine, and have reached varying results. The Second Circuit has refused to subject the Government to a requirement that it marshal assets in favor of junior lienors because "this would create an extreme burden on collection of the revenue, unauthorized by statute." United States v. Herman, 310 F.2d 846 (2nd Cir. 1962).

The Eighth Circuit adopted a similar position in United States v. Stutsman County Implement Co., 274 F.2d 733 (8th Cir. 1960). It did not find in any of the cases cited by the creditor-appellee a holding that the Court may discharge a valid tax lien imposed by the statute merely because it appears to the Court that the existence of the lien bears harshly on those who have dealt with the taxpayer in disregard of the lien.

A district court, interpreted a Supreme Court per curiam reversal as disallowing the doctrine of marshaling assets, and therefore refused to apply it upon remand of the case. United States v. Wintner, 375 U.S. 393, 84 S.Ct. 451, 11 L.Ed.2d 411 (1964) ; on remand 247 F.Supp. 47 (D.C.Ohio 1964). Mertens has also noted that the Government is not required to seek its taxes from any particular source. 9 Mertens § 54.52 at p. 161.

Refusal to apply the doctrine is based upon construction of the tax lien statutes in the following manner. The statute creates the tax lien and prescribes its duration. After the notice has been duly given, the power of the Court to determine the rights of the parties in respect to the lien is limited by statute. There is no statutory authority conferred on the Court to discharge or terminate the lien already attached to specific property without satisfaction of the tax or exhaustion of the property. The Court's usual equity powers are said to be limited by the special statutory provisions of § 6325 regarding discharge of tax liens, which provisions make no mention of discharge by marshaling other assets of the taxpayer. That rationale is analogous to a similar refusal to apply the doctrine in levy situations.

This Court finds the line of cases refusing to apply the doctrine of marshaling assets to be more convincing. This is especially so in-view of the equities appearing in the instant case.

Before it obtained the final judgment in its creditor's suit, Fontainebleau stood as any other judgment creditor and could attempt to execute on or reach any of Cohen's assets not exempt by state statute just as it now wants the Government

to do. It chose to reach for the beneficial interest which is the subject of this lawsuit. In so doing, it chose not to join the Government as a party defendant, as it could have under 28 U.S.C. § 2410. If Fontainebleau had joined the Government as a defendant in its suit, this controversy would have been disposed of without further adieu.

When the Government attempted to intervene in the creditor's suit, Fontainebleau, through its attorney, stated to that Court:

> We did not adjudicate the Government's rights and no effort to adjudicate the Government's rights was made and the final decree in no way affects the Government's rights. They have lost nothing by the sale we are going to make and I see that they have no standing in this Court, even if there has been a final decree which forecloses them out * * *.

It again reiterated this position in its Memorandum Reply herein filed on March 2, 1967, in response to Cohen's Motion to Dismiss Fontainebleau's Counterclaim. It states that the State Court denied the Government's petition to intervene on two theories;

1. The United States claimed to have a first lien in its petition to intervene on the equity created by the Middleton agreement. If this were true, the State Court felt that the foreclosure by the Fontainebleau Hotel would not affect the Government.

2. If the Government's lien was inferior and it had not been made a party to the foreclosure proceedings, it was still free to maintain a suit to test the priority of its claim and that of the Fontainebleau Hotel by an independent proceeding.

However, now Fontainebleau attempts to use its judgment and purchase obtained on the above representation to take a contradictory position. In effect it is asking this Court to consider the Citrus County proceedings as going to the merits of the Government's claim. Furthermore, as a general creditor of Cohen, Fontainebleau may still try to reach Cohen's other assets, just as may the Government. Thus there is no reason to apply the equitable doctrine of marshaling assets, for Fontainebleau is not a creditor who has resort to only one of the funds available for satisfaction of the Government's claim—it can resort to the same funds which the Government may attempt to reach. By reason of the foregoing, this Court will not require the Government to satisfy its tax lien from other assets the taxpayer may own.

## IV. ESTOPPEL BY JUDGMENT

Finally, Fontainebleau contends that the Government is estopped to bring this action by virtue of the final judgment and denial of its petition for intervention in the creditor's suit, which the Government has failed to appeal.

In order for an estoppel by judgment to arise, there must be a final judgment or decree rendered on the merits, which will be conclusive of the rights, questions and facts, the determination of which was necessary to the judgment rendered. A judgment or decree rendered on any grounds which do not involve the merits of the action may not be used as the basis for the operation of this doctrine. Armstrong v. Manatee County, 49 Fla. 273, 37 So. 938 (Fla. 1905); Tilton v. Horton, 103 Fla. 497, 137 So. 801, 139 So. 142 (Fla.1931); Universal Construction Co. v. City of Ft. Lauderdale, 68 So.2d 366 (Fla.1953).

As Fontainebleau itself admitted and even argued as a basis for denial of leave to intervene, the Citrus County Circuit Court's denial of the Government's petition was not an adjudication of the merits of its claim.

The final judgment rendered by the Citrus County Circuit Court cannot estop the Government to pursue its claim because the Government was not a party to that lawsuit nor is it privy to any party to the lawsuit.

As Fontainebleau contended in the argument on the Government's pe-

tition, a mortgagee is not bound by any judgment or decree rendered in a suit to which it was not made a party, where its interest antedates the action. Logan v. Stieff, 36 Fla. 473, 18 So. 762; Stokely v. Conner, 80 Fla. 89, 85 So. 678.

 If the Government had been permitted to intervene, it would have been bound, but even the right to intervene does not subject one to the doctrine of estoppel by judgment. Merriman v. Lewis, 141 Fla. 832, 194 So. 349 (Fla.1940). Thus, no estoppel arises by virtue of either the denial of the Government's petition or the final judgment in the Citrus County creditor's suit.

## V. RELEASE

 Although defendant Fontainebleau has alleged the defense of a release of the Government's lien in its answer, it has not submitted anything in support thereof in response to the Government's Motion for Summary Judgment. When such a motion is made and supported, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Federal Rules of Civil Procedure. The Government has effectively denied any release of this lien by affidavit of the District Director of the Internal Revenue Service at Jacksonville, and Fontainebleau has failed to meet its burden. It cannot under the rules rest on its naked allegation to attempt to create a fact issue.

Thereupon, there being no genuine issue of any material fact, it is ordered and adjudged as follows:

The Government's Motion for Summary Judgment be and the same is hereby granted. However, this judgment is limited to a determination that the Government's tax lien on Cohen's beneficial interest in the Myers-Middleton mortgage is prior to the Fontainebleau's claim as Cohen's creditor and purchaser of said property.