**EASTERN INDEMNITY COMPANY OF MARYLAND, Plaintiff,**

v.

**J.D. CONTI ELECTRIC COMPANY, INC., et al., Defendants.**

**Civ. A. No. 83–0055–R.**

United States District Court,
E.D. Virginia,
Richmond Division.

Nov. 1, 1983.

Larry M. Topping, Newport News, Va., for plaintiff.

G. Wingate Grant, Asst. U.S. Atty., Richmond, Va., for defendant, United States of America.

Andrew W. Wood, Richmond, Va., for defendant, J.D. Conti Electric Co.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiff commenced this action in the Circuit Court of Lancaster County, Virginia by filing a petition for attachment against J.D. Conti Electric Company, Inc. ("Conti Electric"), J.D. Conti, and Carol K. Conti. That court allowed the United States of America to intervene as a codefendant pur-

suant to Va.Code § 8.01–573 (1977). The government subsequently filed a petition to remove the action to this Court pursuant to 28 U.S.C. §§ 1441, 1444, 1446, and 2410.

Plaintiff moved to remand this action on a ground now moot.[1] The Court, however, in a memorandum and order issued August 1, 1983, raised concerns of its own regarding the propriety of removal. The Court in its memorandum discussed several possible grounds for removal and the problems associated with each, and directed the parties to file memoranda on the issues raised. The Court further ordered proceedings in this action stayed pending resolution of the jurisdictional question.

The parties have now responded to the Court's directive. The Court has carefully considered their responses and the various possible bases for removal and has concluded that the action must be remanded to the state court.

The government has asserted three alternative grounds for removal. First, the government argues that this action was properly removed under 28 U.S.C. § 1444, which allows removal of actions "brought under 28 U.S.C. § 2410." The Court disagrees that this action can properly be characterized as having been brought under § 2410 and consequently rejects this ground.

As the Court's previous memorandum stated, the purpose of § 2410 is to provide a limited waiver of the United States' sovereign immunity so that a party can bring the United States into an action of the appropriate type. *See United States v. Brosnan*, 363 U.S. 237, 244–46, 80 S.Ct. 1108, 1112–14, 4 L.Ed.2d 1192 (1960). The purpose of § 1444 is to condition the waiver of sovereign immunity contained in § 2410 on the right to have the matter decided in federal court at the United States' option.

The Court raised two concerns regarding removal of this action under § 1444. One was whether the instant suit was the type of action to which § 2410 applies. The

1. Refer to Court's August 1, 1983 memorandum.

Court is now satisfied, at least arguably, that it is.[2]

The second concern the Court raised was whether, in light of the procedural posture of this action, it could properly be characterized as having been "brought under" § 2410. The plaintiff did not originally name the United States as a defendant and has not invoked § 2410. Rather, the United States injected itself into the state proceedings, pursuant to Va.Code § 8.01–573, which gives third parties claiming an interest in attached property the right to intervene.

Thus, the plaintiff has not taken advantage of § 2410's waiver of sovereign immunity. Nor is he required to do so, even assuming that the United States is a senior lienholder. The Virginia statute on joining lienholders is permissive: "There *may* also be made a defendant any person claiming ... a lien upon the property sought to be attached." Va.Code § 8.01–539 (emphasis added). Likewise, 28 U.S.C. § 2410 is not mandatory—it permits but does not require joinder of the United States. *United States v. Brosnan*, 363 U.S. 237 at 246, 80 S.Ct. 1108 at 1114, 4 L.Ed.2d 1192 *compare United States v. Bluhm*, 414 F.2d 1240, 1243 (7th Cir.1969), *cert. den.* 397 U.S. 910, 90 S.Ct. 909, 25 L.Ed.2d 91 (holding that when the United States held a senior tax lien, it was an indispensable party under the controlling federal tax law).

The government is correct that as a matter of general commercial law anyone seeking to foreclose a lien upon property must name, as a defendant, anyone who claims an interest in that property in order for the foreclosure to cut off the rights of the lienholders. However, the result of that rule in this case is not that all lienholders must be named as a defendant, but rather that the rights of the unnamed lienholders are not extinguished by the foreclosure sale. The purchaser in the attachment proceedings can acquire only the rights in the property that the plaintiff and named defendants previously possessed. *See* 2A Michie's Jurisprudence of Virginia and West Virginia, *Attachment* §§ 57, 58, and 64 (1981); *Citizens' Bank & Trust Co. v. Chase*, 151 Va. 65, 144 S.E. 464 (1928). Where the United States holds a senior lien, this is true independently of state law, because the United States' senior lien cannot be extinguished in a suit to which it has not consented. *See United States v. Cohen*, 271 F.Supp. 709, 717 (S.D.Fla.1967). If the United States had not intervened in the state proceedings, which Va.Code § 8.01–573 permitted but did not require it to do, and if Eastern Indemnity had persisted in failing to exercise its right under Va.Code § 8.01–539 and 28 U.S.C. § 2410 to name the United States as a defendant, the purchaser at any foreclosure sale in the state proceedings would have taken the attached property subject to the United States' lien, assuming it is senior to Eastern Indemnity's. *See U.S. v. Cohen, supra*.

█ In sum, the United States was a voluntary party in the state proceedings in this action. Consequently, invocation of 28 U.S.C. § 1444, designed to allow the United States to remove to federal court when involuntarily brought into a state proceeding pursuant to § 2410, is inappropriate.

This, of course, does not leave the government remediless. It may seek to withdraw its intervention in the state court proceedings, and, if successful, force the plaintiff to choose between invoking § 2410 or being satisfied with a judicial sale of the attached property subject to the United States' potentially senior lien thereon. *See U.S. v. Cohen, supra*. Alternatively, or in

---

**2.** The category into which the instant action most comfortably falls is that of actions "to foreclose a mortgage or other lien." 28 U.S.C. § 2410(a)(2). Under Virginia law, a proceeding on a petition for attachment is not, as in some states, ancillary to another action on the merits of petitioner's claim to the attached property. *See* Michie's Jurisprudence of Virginia and West Virginia, *Attachment* § 4 (1981). Rather, in Virginia attachment proceedings include both establishment of a lien on the property attached and execution of the lien through a judicial sale, after adjudication of the petitioner's right thereto. *Id.; Va.Code* § 8.01–570. Hence, the attachment proceeding in effect incorporates an action to foreclose on the lien that is created by the attachment.

addition, the government may initiate a separate suit, in federal court pursuant to 28 U.S.C. § 1345, to foreclose on its lien on the attached property. Note that the United States' lien, if senior, may be preserved even if the United States does not withdraw from the state proceedings, and even if those proceedings end in a judgment against the United States, unless the plaintiff can point to some statutory authority for waiver of the United States' sovereign immunity. The United States' voluntary intervention would not appear to constitute a waiver, because the United States Attorney has no power, in the absence of statutory authority, to waive the United States' sovereign immunity. *Armstrong v. United States*, 283 F.2d 122 (3rd Cir.1960); *contrast United States v. Brosnan*, 363 U.S. at 252, 80 S.Ct. at 1117 (holding that sovereign immunity does not bar extinguishment of United States' *junior* lien in proceeding in which United States was not a party).

As a second alternative ground for removal, the government states that "it is arguable that any suit against the United States involves a federal question and hence is subject to removal under the general removal statute. 28 U.S.C. § 1441, § 1331."[3] In support of this contention, the government relies primarily on the holding in *Perpetual Building & Loan Association v. Series Directors, etc.*, 217 F.2d 1 (4th Cir.1954). That case relates to the federal jurisdictional status of actions involving federally chartered corporations. The jurisdictional status of such corporations, as distinguished from federal agencies, has been the subject of special legislation and an independent line of case law for some time. *See*, 13 Wright, Miller and Cooper, *Federal Practice and Procedure*, §§ 3571, 3627. Hence, the holding in *Perpetual Building & Loan Association, supra*, is not controlling here.

■ The general test for federal question jurisdiction is that a right created by federal law must be an essential element of the plaintiff's claim. *Gully v. First National Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936). The mere naming of a United States agency as a defendant does not alter this test, nor does it mean that the test is automatically met. *Mullins v. First National Exchange Bank*, 275 F.Supp. 712 (W.D.Va.1967) (finding no federal question jurisdiction where the Small Business Administration had been named a defendant but where there had been no showing that any part of the Small Business Administration Act or other federal law was involved); 1 Lawyers Edition, *Federal Procedure* § 1:405 (1981). The government does not point to any federal law element in the plaintiff's claim or indeed to any federal issue in the case; nor is any apparent to the Court. The Court concludes that there is no federal question and hence that removal on this basis is inappropriate.

■ The government's final alternative contention is that the action was properly removed pursuant to 28 U.S.C. § 1441 and § 1332, the diversity jurisdiction provision. The government has submitted adequate evidence in support of its assertion that diversity exists as between defendants Conti Electric, J.D. Conti, and Carol K. Conti and plaintiff Eastern Indemnity.[4] However, the Court finds there is no diversity between the plaintiff and the United States, and hence that under the complete diversity rule, *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806), there is no diversity jurisdiction. 28 U.S.C. § 1332(a) authorizes federal jurisdiction over cases "between citizens of different states." The statute does not say merely that the adverse parties must not be citizens of the same state; rather, it affirmatively requires that they be citizens of different states. The United States is not a citizen of any state for jurisdictional purposes. *Texas v. Interstate Commerce*

---

**3.** *Defendant United States' Memorandum on Removal*, filed Aug. 15, 1983, pp. 6–7.

**4.** See *Defendant United States' Supplemental Memorandum on Removal*, filed Sept. 13, 1983, and *Defendant United States' First Request for Admissions* attached thereto. The Request for Admissions, which sought to establish the necessary jurisdictional facts, were not answered in timely fashion and hence are deemed admitted. Fed.R.Civ.P. 36(a).

*Commission,* 258 U.S. 158, 160, 42 S.Ct. 261, 262, 66 L.Ed. 531 (1922). Hence, no diversity exists between the United States and other parties. *See Brumfield v. National Flood Insurance Program,* 492 F.Supp. 1043, 1044, (M.D.La.1980); *Jizmerjian v. Department of Air Force,* 457 F.Supp. 820, 822 (D.S.C.,1978). Joinder of the United States as a defendant destroys the diversity that would otherwise exist between the original parties. *See T.M. Systems, Inc. v. United States et al.,* 473 F.Supp. 481, 485 (D.Conn.1979); *see also McGlynn v. Employers Commercial Union Ins. Co. of America,* 386 F.Supp. 774, 776 (D.P.R.1974).

The government cites *Grubbs v. General Electric Credit Corp.,* 405 U.S. 699, 704, 92 S.Ct. 1344, 1348, 31 L.Ed.2d 612 (1972), as authority for a contrary holding. While it is true that in *Grubbs* the United States had been a party to some of the claims that had been before the district court and that the Supreme Court ultimately found there was jurisdiction as to the appealed claims, the Supreme Court did not discuss the relevance of the United States' participation in the case to the jurisdictional issues it addressed. In addition, several important factors distinguish that case from the instant one. Most importantly, one essential element of *Grubbs* was the Court's holding that the presence or absence of jurisdiction was to be decided as of the time of judgment because the jurisdictional issue was not raised until after judgment was entered, when the Court of Appeals *sua sponte* raised it. There were many different parties and claims at various times in the proceedings in *Grubbs, id.* at 704–75, 92 S.Ct. at 1348–49, but in the end, the district court entered judgment only on Grubbs' claim against GECC and GE, between whom there was diversity. The claims by and against the United States were dismissed at the time the Court entered judgment on the other claims. *Id.* at 701–702, 92 S.Ct. at 1347.

Moreover, the claims by and against the United States in *Grubbs* were virtually unrelated to the claims on which the district court entered judgment. *Id.* at 706, 92 S.Ct. at 1349. Indeed, had jurisdictional concerns been raised in the district court, the claims by and against the United States could most probably have been severed.

If the proposition the government argues were correct, then diversity jurisdiction would exist in any action in which the United States is a party. The proposition would apply equally to cases in which the United States is the sole defendant as it would to cases in which the United States is one of several. *See Strawbridge v. Curtiss, supra.* Consequently, the various statutes authorizing federal jurisdiction over specific categories of cases in which the United States is a defendant, e.g., 28 U.S.C. § 1444, would be redundancies. The Court declines to accept a proposition, tenuous in any event, that would entail the assumption that Congress had passed a myriad of redundant statutes.

The Court sees no grounds for removal other than those asserted by the Government, and these the Court deems inapplicable.

An appropriate order will issue.