79 So.2d 31

**Annie Mae VINSON**

v.

**Elmina VINSON.**

**5 Div. 557.**

Supreme Court of Alabama.

March 24, 1955.

Ellis & Fowler, Columbiana, and J. B. Atkinson, Clanton, for appellant.

Omar L. Reynolds, Reynolds & Reynolds, Clanton, for appellee.

GOODWYN, Justice.

This is the second appeal in this case, the first appeal being reported as Vinson v. Vinson, 256 Ala. 259, 54 So.2d 509. The first appeal was from a decree overruling demurrer to the bill. The only question for decision there was whether the bill stated a case for declaratory relief. We held the bill to be sufficient in that respect and affirmed the case. Code 1940, Tit. 7, § 159.

The bill seeks to determine the right and title to the proceeds of 18 postal savings certificates of a total face value of $1,011. The present appeal is from the final decree holding that complainant-appellee, Elmina Vinson, "has the full and exclusive right, title, claim and interest in and to said postal savings certificates or said postal sav-

ings account, the subject matter of this suit."

The appellee is the mother of Hollis B. Vinson, who died testate on or about November 20, 1949. Respondent-appellant is Hollis' widow and executrix of his last will and testament, under which she is the sole beneficiary. The point in controversy is whether Hollis' mother or his widow is entitled to the savings certificates.

The position taken by the mother is that, although the savings certificates were issued in the name of her son, H. B. Vinson, who is the same person as Hollis B. Vinson, she nevertheless is entitled to the certificates and the savings account for the reason that it was her money which was deposited in the account, as represented by the savings certificates, and that she made no gift inter vivos of the money or certificates to Hollis.

Appellant's insistence is "that the opening of the postal savings account in the name of H. B. Vinson and the issuance of the 18 certificates of deposit in his name constituted a gift of the property to him and that the complainant put the funds in his name as a gift equal to the gift complainant made to her other two children and thus the funds were put beyond her control or recall"; "that if the complainant opened the three postal savings accounts in the names of her children for her own benefit, she violated postal savings rules and regulations pertaining to such accounts which forbid any one person from having more than one postal savings account, and further that she thus violated postal savings rules and regulations which forbid the opening of any such account in the name of one person in trust for another"; "that if the complainant opened the postal savings accounts in the names of her three children for the purpose of putting her money beyond the control of her husband, if she should die first, she does not come into the court with clean hands and therefore is not entitled to the relief prayed for."

There is no dispute that the savings certificates were purchased with Elmina Vinson's personal funds derived by her from

operation of her own farm. The evidence discloses that in 1945 Elmina caused her daughter, Dollie, who lived with Elmina, to open United States postal savings accounts in the names of each of Elmina's three children, Walter, Hollis and Dollie. Elmina testified that she told Dollie to divide the money, "to put it in her name, Hollis' name and Walter's name so if anything happened to me her daddy wouldn't get it." She further testified that she was making an equal division of her money among her children. Dollie, in the company of Walter, opened the three accounts. Dollie and Walter each personally signed the application blanks, but Dollie signed the name of Hollis on the application for an account in his name. On the day the accounts were opened, and from time to time thereafter, Dollie purchased out of her mother's funds, and at her request, equal amounts of certificates in the name of each account. The applications to open the postal savings accounts, on the reverse side of which are recorded deposits and withdrawals, as well as the postal savings certificates purchased, were always kept in Elmina's home. It does not appear that Hollis was ever informed of the existence of the account in his name or of the purchase of certificates in his name. Elmina's husband died on July 14, 1949. Both of the accounts in the names of Walter and Dollie have been closed. The evidence does not disclose the disposition made of the proceeds.

The following Postal Laws and Regulations are pertinent here, 39 C.F.R., 1949 Ed., Sect. 82.1(a), (b) and (c):

"§ 82.1. *Accounts*—(a) *Who may open.* Accounts may be opened and deposits made * * * by any person of the age of ten years or over, in his or her own name, and by a married woman in her own name and free from any control or interference by her husband; but no person shall at the same time have more than one postal-savings account in his or her own right. (Sec. 4, 36 Stat. 815; 39 U.S.C. 754)

"(b) *Only in name of individual.* Deposits shall be accepted only in the name of individuals, and no account shall be opened in the name of any corporation, association, society, firm, or partnership, or in the names of two or more persons jointly. No account shall be opened in the name of one person in trust for or on behalf of another person or persons.

"(c) *Only one account to a person.* Accounts may be opened and deposits accepted without regard to the residence of the depositor, but no person may at the same time have more than one postal-savings account either at the same office or at different offices."

The law regarding gifts of personal property is well settled. Section 129, Tit. 47, Code 1940, provides that a parol gift of personal property is inoperative "until the custody, control, management, and use of the property passes from the donor to the donee, and is possessed by such donee or his agent". And this court has held that a clear surrender of the right and of the dominion over the property is required in contradistinction to a promise or an intention to surrender. There must be no reservation of any control over the property and nothing must remain to complete the delivery. Livingston v. Powell, 257 Ala. 38, 43, 57 So.2d 521; DeMouy v. Jepson, 255 Ala. 337, 339, 51 So.2d 506; Davis v. Wachter, 224 Ala. 306, 308, 309, 140 So. 361. The rule is thus stated in DeMouy v. Jepson, supra [255 Ala. 337, 51 So.2d 508]:

"It is an essential prerequisite of a gift inter vivos that there must be a clear intention of the donor to make the gift with the donor's relinquishment of all present and future dominion thereover and a delivery to and acceptance thereof by the donee. Collins v. Baxter, 231 Ala. 247, 164 So. 61."

As authority for the contention that Elmina Vinson put the funds represented by the postal savings certificates completely beyond her control by making deposits in the name of her son, Hollis, and that title therefore must have passed to him, appellant refers to the Postal Savings Rules and Regulations calling for identification of and indorsement by the depositor on

withdrawal of funds. But such rules and regulations also include the following provision for payment of postal savings accounts when ownership of the accounts is disputed, 39 C.F.R., 1949 Ed., Sect. 86.11:

"§ 86.11 *Disputed ownership of postal savings accounts—(a) Adjudication by courts.* The final judgment, order, or decree of any court of competent jurisdiction adjudicating any right or interest in the credit of any sums deposited by any person with a postal savings depository if the same shall not have been appealed from and the time for appeal has expired shall, upon submission to the Postmaster General of a copy of the same, duly authenticated in the manner provided by the laws of the United States for the authentication of the records and judicial proceedings of the courts of any State or Territory or of any possession subject to the jurisdiction of the United States, when the same are proved or admitted within any other court within the United States, be accepted and pursued by the board of trustees as conclusive of the title, right, interest, or possession so adjudicated, and any payment of said sum in accordance with such order, judgment, or decree shall operate as a full and complete discharge of the United States from the claim or demand of any person or persons to the same. (Sec. 17, 36 Stat. 819; 39 U.S.C. 767)"

This section appears to be clear to the effect that payment can be procured in any case when rights to an account have been finally adjudicated.

The burden is on the donee, the appellant here, to establish the fact of a gift by clear and convincing proof and if the impartial mind is left in doubt or uncertainty as to exactly what the status of the transaction was, the donee has failed to discharge the burden imposed and the claim of gift will fail. DeMouy v. Jepson, supra; Collins v. Baxter, supra; Hudgens v. Tillman, 227 Ala. 672, 151 So. 863.

It is our view, after a careful consideration of the record, that the evidence supports the trial court's conclusion that Elmina Vinson did not intend to make a gift of the postal savings certificates to her son, Hollis. It appears that perhaps she was not fully informed of the nature of the transaction carried out by her daughter, but that she trusted her daughter to attend to her affairs. The factor motivating Elmina Vinson appears to have been her desire to keep her money out of the hands of her husband in the event she predeceased him, rather than the desire to make a present gift to her children. Not only were the postal savings certificates never delivered to Hollis, but it does not appear that he was ever informed of the existence of the account in his name or of the purchase of the certificates.

Appellant takes the position that appellee is not entitled to relief because she does not come into court with clean hands. But we do not think that principle is applicable here. Assuming, without deciding, that appellee violated postal savings rules and regulations, such violation resulted in no injury to Hollis. Nothing was taken away from him by his mother; no advantage was taken of him by her nor did her actions injuriously affect or lessen any right he had; nor was there any equitable relation between them which was affected in any way by what she did. In short, the mother had the right to dispose of her money as she saw fit. The son, Hollis, had no interest whatever in it. She could give it to him and her other children, or not, as she wished. If a gift of part of it to one or more of her children was perfected, to that extent she parted with title; but, until perfected, she retained full title and dominion over it. Hollis, therefore, since the intended gift to him was never perfected, acquired no interest in the savings account which could have been adversely affected by his mother's actions. The "clean hands" doctrine has no application to the facts of this case. Gray v. Gray, 246 Ala. 627, 630, 22 So.2d 21; Van Antwerp v. Van Antwerp, 242 Ala. 92, 98, 99, 5 So.2d 73; Fos-

ter v. Winchester, 92 Ala. 497, 501, 9 So. 83.

The decree appealed from is due to be, and is, affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and MAYFIELD, JJ., concur.