BEATTY, Justice.
This is an appeal from a court decree which removed the appellant, Elaine A. Walker, as trustee of a testamentary trust created by the will of her father, and which divided and distributed funds from a savings account held jointly by the appellant and appellee, Nettie T. Amason. We reverse and remand.
In 1967 Thomas Amason executed a will in which he left his estate to his daughter, Elaine A. Walker, in trust, to be used for the comfort and support of his wife, Nettie T. Amason. The pertinent portion of that will provided that:
All of the rest, residue and remainder of my property of whatsoever kind and character, whether real or personal, and wheresoever situated, I give, bequeath and devise unto my daughter, Elaine A. Walker, as Trustee, in trust nevertheless, for the uses and purposes, upon the terms and conditions, and with the powers and duties hereinafter stated.
(a) I direct that the said Trustee shall hold and manage said property for the use and benefit of my beloved wife, Nettie Ann Amason, for the remainder of her lifetime. During the life of my said wife I direct that the Trustee shall use so much of the income from said property as the Trustee in her sole judgment shall deem to be necessary for my wife’s comfort and support and if in the judgment of my said Trustee the income from said property is not sufficient for said purposes then the Trustee is hereby authorized and directed to use whatever amount of the principal or corpus of said trust for said purposes as she in her sole judgment deems to be necessary. It is my intent that my wife shall be well provided for and that as long as she lives that she shall not want for any of the necessities of life, including the best of medical care as long as she may live even though such comforts and care would use and consume all of the trust estate herein created. Upon the death of my said wife, . . . the remainder of said trust estate shall be distributed .
*788 (b) . . . equally to my children who are then living, share and share alike and to the children of any deceased child of me [sic] in equal shares per stirpes.
In 1969 Thomas Amason directed his daughter, Elaine A. Walker, to open a joint savings account in her name and in the name of her mother. In this account there were placed monies belonging to Thomas and Nettie Amason.
After Thomas Amason’s death, Nettie T. Amason lived for a time in a trailer park, then a nursing home before moving in with a son, appellee Clyde Amason. Shortly after moving into her son’s home, Nettie Amason requested that Mrs. Walker give to her “my money.” Mrs. Walker refused. Thereafter, Mrs. Walker, as co-executrix of the estate, filed a petition for final settlement of the estate of her father. She also petitioned the court to rule that the monies paid into the joint savings account constituted an implied trust to be used by her pursuant to the terms of her father’s will. Nettie Amason and her son, Clyde — a co-executor of the estate — counterclaimed for the savings account monies and asked for removal of Mrs. Walker as trustee.
The testimony at trial showed without dispute that the savings account, established during Thomas Amason’s lifetime, was made up chiefly of Mr. Amason’s black lung benefits and the installment payments from the sale of the Amasons’ jointly owned home. Incidental monies, however, were also included: money saved by the couple from their separate social security income, and Mr. Amason’s miner’s pension. The actual amount of each party’s contribution was not determined by the court and is not determinable from the record. It does appear from the record that after Amason’s death the installment payments from the sale of the home were no longer paid into the joint savings account but were paid into the estate (trust) account. Additionally, Mrs. Walker in December, 1974, closed the joint savings account and paid those funds into the trust account.
Ón February 24, 1975 the outstanding balance on the house note, $5,860.00, was placed in escrow with the Alabama Title Company pending the outcome of these proceedings. The deputy register had determined that of those house proceeds received between Amason’s death and February 24, 1975, $720.00 (V2 the proceeds) belonged to Nettie Amason.
Testimony also showed that while Mrs. Amason receives over $400.00 monthly, principally social security, no monies had been paid to her by Mrs. Walker out of the trust funds since 1972. Nor had Mrs. Ama-son received funds from the joint savings account except for $25.00, and one or two months support in 1974 while she was in the nursing home. There was, however, little or no evidence offered on Nettie Amason’s needs. Clyde Amason testified that while his mother drew about $420.00 a month from social security it would take $650.00 or $700.00 for him and his wife to reasonably take care of her, although testimony had established only $575.00 a month had been paid to the nursing home while she was a patient there. Clyde Amason testified further that the difference in the $700.00 he felt was necessary and the $420.00 a month Nettie Amason received from social security would pay for the trips he and his wife made each month taking Mrs. Amason to the beauty shop, grocery store, etc. His testimony showed, however, that his mother, Nettie Amason, pays for her own food, clothes, cosmetic and beauty shop needs, legal fees and incidental necessities and even then, Mrs. Amason had managed to accumulate from her social security payments $800.00 in savings. Furthermore, when Clyde Amason was asked what he intended to do with any money awarded his mother by order of the court, he stated that he would hold onto it because his mother was still in good health.
On March 16, 1978 the trial court handed down a decree which, as later amended, stated in pertinent part:
The Court concludes form [sic] the evidence that Nettie Amason is fully competent to manage any monies which may be allotted to her from the trust. In spite of her years, she is energetic and know *789 ledgeable. Further, the Court finds that Elaine A. Walker, Trustee, has performed the duties of the Trustee in a commendable manner. However, on account of the change of the residence and living habits and requirements of Nettie A. Amason, it is to the best interest of all parties that Elaine A. Walker be relieved of her duties as Trustee. The performance of the duties of a Trustee are often onerous and thankless. By the removal of Elaine A. Walker as Trustee, the Court does not mean to imply, in the slightest degree, that she has been remiss in the performance of her duties as Trustee, (emphasis added)
The issues heard being submitted upon the pleadings and upon testimony ore tenus it is now hereby CONSIDERED, ORDERED, ADJUDGED and DECREED by the Court as follows:

That Elaine A. Walker is hereby ordered to pay over to Nettie A. Amason the sum of Seven Thousand Dollars ($7,000.00), which sum represents a part of the proceeds of a savings account which was held jointly in the name of Elaine A. Walker and Nettie A. Amason until such time as Elaine Walker withdrew the funds contained therein and the additional sum of Seven Hundred Twenty and no/100ths Dollars ($720.00) which represents the sum of monies found due Nettie Amason by the Deputy Register in his Report of February 21, 1975, that the balance of funds in the hands of Elaine A. Walker in the amount of Seven Thousand Ninety and 77/100ths Dollars ($7,090.77) together with any interest accrued thereon from October 24, 1977 shall be paid over by Elaine A. Walker to the successor Trustee named herein to become a part of the trust estate.

EIGHT: Elaine A. Walker is hereby removed as the Trustee of the Testamentary Trust of Thomas R. Amason, Deceased, and this Court hereby appoints Honorable Harold Goings to serve as successor Trustee of said Trust. Said successor Trustee is hereby directed by this Court to pay the sum of TWO HUNDRED DOLLARS ($200.00) per month unto Nettie A. Amason for her support and maintenance until said monthly payment, within the sound discretion of said successor Trustee, becomes inadequate or excessive due to changed circumstances.
Mrs. Walker’s motion for a rehearing was thereafter denied and this appeal followed.
In effect this appeal is based upon dissatisfaction with (1) the removal of Mrs. Walker as trustee, and (2) the treatment of those funds that were once part of the joint savings account. We will discuss these areas of controversy separately.

Removal of Trustee

The removal of a trustee has long been established as a matter which rests in the sound discretion of the trial court. Our scope of review is therefore limited to determining whether the court has abused its discretion. Ingalls v. Ingalls, 257 Ala. 521, 59 So.2d 898 (1952); Ex parte Jonas, 186 Ala. 567, 64 So. 960 (1914); 90 C.J.S. Trusts § 234 (1955) at 205.
Mrs. Walker argues that the court abused its discretion in removing her for grounds not found within Code of 1975, § 19-3-211. We do not find this to be the case. Section 19-3-211 states inter alia that “the circuit court may remove any trustee who has violated or threatened to violate his trust; ... or who for any cause, is an unsuitable person to execute the trust . . . .” This statute has bee,n held to be merely a declaration of the law as it existed when that statute was enacted and not a limitation upon the power of a court to remove trustees. Ingalls v. Ingalls, supra; First National Bank v. Ingalls, 257 Ala. 536, 59 So.2d 914 (1952); Ex parte Jonas, supra. Mrs. Walker then would have us find an abuse because of the insufficiency of the grounds for removal enumerated in the decree: “change of the residence and living habits and requirements of Nettie T. Amason. . .” We must agree with *790 the appellant that these grounds are insufficient in themselves. The removal of a trustee is such a drastic action that it should be taken only when the estate is actually endangered and intervention is necessary to save trust property. Ingalls v. Ingalls, supra; Chambers v. Mauldin, 4 Ala. 477 (1842). Examples of such instances may be found in 90 C.J.S. Trusts § 232 (1955) and 76 Am.Jur.2d, Trusts § 130 (1975). Because the decree is not justified by the stated grounds we might find an abuse of discretion warranting reversal here were we not bound to search further. Our review of such actions however is not restricted to the four corners of the decree, and we determine from the record if there is sufficient cause for removal of the trustee. In effect we must uphold the decree if it is correct, even if those reasons the trial court gave for its issuance are incorrect. Staub v. Alabama Power Co., 350 So.2d 386 (1977); Garrett v. Federal Land Bank of New Orleans, 239 Ala. 191, 194 So. 530 (1940); Shepherd v. Nabors, 6 Ala. 631 (1844).
The Amasons first argue that there is an obligation upon a trustee to actively determine what the needs of the beneficiary are and to act accordingly. From Mrs. Walker’s own testimony it is clear that since October of 1974 she had taken no affirmative action to ascertain the amount of funds necessary for her mother’s support. This, they argue, citing Strawn v. Caffee, 235 Ala. 218, 178 So. 430 (1938); Coker v. Coker, 208 Ala. 354, 94 So. 566 (1922); McDonald v. McDonald, 92 Ala. 537, 9 So. 195 (1891) was a failure to exercise discretion and is ample reason for her removal as trustee. We disagree. In Ingalls v. Ingalls, supra, we had occasion to speak to such a situation and held that “[t]he mere fact that the [trustee] Bank took no affirmative steps to inquire whether distribution to the [minors] was needed does not justify its removal as a trustee, especially where the record falls far short of showing that the minor beneficiaries suffered in any way because it failed to take such action.” The cases which the appellee cites to us involve situations where the needs of the beneficiary were apparent from the record, as in Coker v. Coker, supra ; were properly averred so that a prima facie cause of action was set out, as in Strawn v. Caffee, supra ; or were unnecessary to the outcome of the case because the trustee had asserted — contrary to the trust — that the beneficiaries were not entitled to anything during his lifetime despite their claims, as in McDonald v. McDonald, supra. These cases may further be distinguished from the instant case, however such would be surplus-age. The holding in Ingalls v. Ingalls, supra applies a fortiori here where the record, far from showing that the beneficiary suffered from the lack of inquiry, i. e., that she was in need, shows affirmatively that Mrs. Amason did not lack for the necessities, and indeed enjoyed some of the luxuries available to an eighty-year-old woman. Though she did not possess the funds she desired for travel, and there is no evidence this desire was made known to her trustee, Mrs. Walker, it is clear that Mrs. Amason had accumulated over $800.00 in savings from her social security checks alone.
The Amasons argue also that removal was proper because the interest Mrs. Walker had in the trust estate was adverse to the interests of the beneficiary. This is so, it is maintained, because that portion of the estate not expended for the comfort and support of Mrs. Amason will pass , on her death to Mrs. Walker and her brothers and sisters. We hold, however, that this conflict does not justify the action of the court in removing Mrs. Walker as trustee. Doubtless the testator was aware of that conflict of interest when he named his daughter to the position of trustee for his widow. In such a case we will observe the desires of the testator in the appointment of a trustee, even though he may see fit to appoint one whose interest in the estate is such that a court itself would not appoint that person. See In re Weller’s Estate, 267 Ill. 230, 108 N.E. 306 (1915). While we might detect from the record a spirit of family disharmony, we do not find — and the Amasons do-not contend — that there exists such hostility that a removal of the trustee *791 is required or justified. See e. g., McDonald v. McDonald, 92 Ala. 537, 9 So. 195 (1891); 90 C.J.S. Trusts § 232 C.(2) (1955).
Because it is apparent that neither the record nor the trial court’s order justifies the drastic action of removal of the trustee and in ordering the successor trustee to pay $200.00 a month to Mrs. Amason, we hold that the court abused its discretion in doing so. Such an abuse requires a reversal.
This leads us to that area of controversy surrounding the joint savings account.

Savings Account Distribution

Mrs. Walker argues that the trial court also erred in its division of those funds which had made up the joint savings account. By that division $7,000.00 was awarded to Nettie T. Amason. The balance ($2,632.81) along with any interest that had accrued was to become a part of the trust estate. We agree that there was reversible error in the division and distribution of these funds. This follows not necessarily because the court’s action was inconsistent with the contentions of the parties, i. e., each side claimed ownership of aii the funds, but because the amounts distributed to Nettie Amason and the trust estate were not supported by the record.
It is well-settled that where the trial court omits to make a direct finding on a certain matter, and yet the decree rendered necessitated such a finding, it will be presumed that the finding was made unless, of course, the finding would be clearly erroneous and against the great weight and preponderance of the evidence. See Acker v. Protective Life Ins. Co., 353 So.2d 1150 (Ala.1977); White v. White, 350 So.2d 326 (Ala.1977); Aikin v. Murphy, 282 Ala. 538, 213 So.2d 383 (1968).
In this case Mrs. Walker contended that the savings account was composed totally of funds which she was empowered to hold as trustee for her mother, Nettie T. Amason, under the terms of the will. The burden of establishing such a trust is upon him who seeks it. Osborn v. Empire Life Ins. Co. of America, 342 So.2d 763 (Ala. 1977); Westcott v. Sharp, 256 Ala. 418, 54 So.2d 758 (1951). Mrs. Amason, on the other hand, contended that the sole title to the funds was in her. On the facts of this case Mrs. Amason’s theory would depend upon the court’s finding that her husband had made a gift to her of that portion of the account made up of funds belonging to the testator. She had the burden of establishing the fact of gift by clear and convincing proof. Vinson v. Vinson, 262 Ala. 388, 79 So.2d 31 (1955); DeMouy v. Jepson, 255 Ala. 337, 51 So.2d 506 (1951). Our review of the record discloses that neither of the parties carried their respective burdens. The record establishes that funds were placed into the savings account belonging to both the testator and his wife. If the account did not constitute a trust, or a gift, then the funds remained the property of the contributors. When the testator died, his portion would have become part of the trust estate under his will while title to the other portion would have remained in Nettie T. Amason. Unfortunately, however, the record does not support the trial court’s actual monetary apportionment of the funds. It would appear from the facts that the greater portion of the funds was contributed by the testator, yet the decree apportions the funds so that the greater portion would belong to the appellee, Mrs. Amason. This apportionment is not supported by the record and, accordingly, we must reverse and remand with directions that any division be supported by facts enabling the trial court to accurately determine the amounts owing to both the trust fund and Nettie T. Ama-son.
REVERSED AND REMANDED WITH DIRECTIONS.
TORBERT, C. J., and MADDOX, JONES and SHORES, JJ., concur.