"No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest."
Most lawyers will immediately recognize this as the statement of the Rule against Perpetuities, which, when read, seems simple enough; but, when applied, has confounded lawyers, judges and law students for ages. In fact, one law professor, in an article entitled "Perpetuities in a Nutshell" observed:
 "We school teachers have delighted to make a mystery of the Rule against Perpetuities. We love to tell the old, old story of its tangled history; we love to trace its development through English cases which deal with settlements of incredible complexity; we love to point the finger of scorn at the mistakes of courts on both sides of the Atlantic; and most of all we love to spin out our webs of theory on relatively obscure points. The result is a very highly elaborated field of the law — a great advantage to those who know their way around in it, but precious little help to the ordinary practitioner who has had no particular occasion to explore this terrain but who finds himself with a perpetuities problem to handle. . . ." Leach, Perpetuities in a Nutshell, 51 Harv.L.Rev. 638 (1938).
Leach, in a footnote to his article, noted:
 "If this paper fails of its purpose it has, at least eminent company. Lord Thurlow undertook to put the Rule in Shelley's Case in a nutshell. `But', said Lord Macnaghten, `it is one thing to put a case like Shelley's in a nutshell and another thing to keep it there.' Van Grutten v. Foxwell, [1897] A.C. 648, 671." *Page 1106 
This opinion, which involves the application of the Rule against Perpetuities to a residuary trust created by a testator, will either confirm Leach's belief that the Rule can indeed be put in a nutshell, or it will confirm his fear that his article may have failed of its purpose. The reader of the opinion will have to pass judgment individually to decide whether Leach's belief or his fear is sustained.
The second issue presented is whether bearer bonds purchased by the testator and found in a safe-deposit box owned jointly by the testator and his widow are due to be awarded one-half to the widow and one-half to the testator's estate.
The testator, W.C. Adams, died in August, 1978, leaving a substantial amount of real and personal property. By will, he set up two trusts. Trust A is a "marital-deduction" trust of an amount calculated so as to take advantage of the maximum marital deduction permitted by federal estate tax laws. Trust B is funded by the residuary estate and is to be held by the bank, in trust, for the benefit of testator's widow, for life, and then for the benefit of his only daughter, Adelia Adams Coker, for life. After the death of both his widow and daughter, the fund is to be held for the benefit of his grandchildren for life. As each grandchild dies, that grandchild's share is to be paid free of trust to that grandchild's "descendants" as each descendant attains age twenty-one. At the time of testator's death, his widow, his daughter, and two grandchildren, Andrea and Wayne Coker, were living.
The pertinent language in Trust B reads as follows:
"(B) The other such share, to be known as `Trust B', shall consist of the balance of my residuary estate, or my entire residuary estate if my wife predeceases me. I direct that any estate taxes due as a result of my death be paid from this part of my residuary estate as hereinbefore directed.
"(B)(1) The Trustee is authorized to accumulate the net income or to pay or apply so much to the use of my wife, Vera W. Adams, in such amounts and proportions as my said Trustee in its sole and absolute discretion shall deem advisable from time to time without regard to equality of distribution. * * *
"(B)(2) At the death of my wife, Vera W. Adams, or at my death should she predecease me, the Trustee shall hold said trust estate in trust for the use and benefit of my daughter, Adelia A. Coker, or her descendants as follows:
* * * * * *
"(B)(3) After the death of my wife, Vera W. Adams, and my daughter, Adelia A. Coker, or at my death should they both predecease me, the Trustee shall hold said trust estate in trust for the use and benefit of my grandchildren, and the descendants of any deceased grandchild of mine as may then be living, in equal shares, per stirpes. During the term of this trust as to any grandchild of mine entitled to share in said trust estate under the terms hereof, the Trustee shall use, expend and apply for his or her support, education and maintenance, such part of the income from his or her share of said trust estate, and of the principal thereof, as the Trustee deems necessary or desirable for said purposes so long as he or she shall live.
"(B)(4) The share of any deceased grandchild's descendant who is entitled to share in said trust estate at the time of apportionment into shares shall vest in such descendant of a deceased grandchild of mine as of the date herein fixed for the apportionment of said share, but shall be held in trust for such descendant until he or she shall attain the age of twenty-one years, at which time it shall be transferred and paid over to him or her free from this trust. During the continuance of the trust as to the share of any such descendant of a deceased grandchild of mine, the Trustee shall use and apply such part of the net income from his or her share of said trust estate, and of the principal thereof, as the Trustee deems necessary or desirable for the support, education and comfort of such descendant.
"(B)(5) At the death of any grandchild of mine entitled to share in said trust estate *Page 1107 
under the terms of this Article of my will, leaving any descendant of him or her then living, then at the death of such grandchild, the Trustee, after first paying the expenses of his or her last illness and funeral, shall transfer and pay over to the descendants then living of such grandchild so dying, in equal shares, per stirpes, the share of said trust estate then held in trust for such grandchild so dying, provided, however, if any descendant of any such grandchild so dying shall have not attained the age of twenty-one years, then though the share of such descendant in said trust estate shall be deemed to have vested in him or her, the Trustee shall hold the same in trust for him or her until he or she shall attain the age of twenty-one years, using and applying for his or her support, education, and comfort, such part of the net income from his or her share of said trust estate, and of the principal thereof, as the Trustee deems necessary or desirable for said purposes.
"(B)(6) In the event that any grandchild of mine entitled to share in said trust estate under the terms hereof shall die prior to the distribution to him or her of all of his or her share of said trust leaving no descendant of him or her then living, then at the death of such child, the Trustee, after paying the expenses of his or her last illness and funeral, shall transfer and pay over the share of said trust estate then held in trust for such grandchild so dying, to such of my grandchildren, and the descendants of any deceased grandchild of mine as then are living, in equal shares, per stirpes; provided that if any such grandchild or descendant of a deceased grandchild of mine shall then have property held in trust for him or her under any provision of this will, then his or her share in the share of such grandchild so dying shall be added to, merged in, and administered and disposed of like such other property so held in trust for him or her."
 STATEMENT OF THE RULE
In Alabama, the Rule against Perpetuities is that prescribed by the common law. Code 1975, § 35-4-4. Succinctly stated, the Rule provides that "no interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." Henderson v. Troy Bankand Trust Company, 250 Ala. 456, 34 So.2d 835 (1948); Ramage v.First Farmers and Merchants National Bank, 249 Ala. 240,30 So.2d 706 (1947). Also see, Lyons v. Bradley, 168 Ala. 505,511, 53 So. 244 (1910); and Simes and Smith, The Law of FutureInterests, 2d ed., § 1222; Gray, The Rule Against Perpetuities, 4th ed., § 201.
 NATURE OF THE RULE
The Rule against Perpetuities is a rule invalidating interests which vest too remotely. Indeed, it is often called the "rule against remoteness of vesting." Leach, Perpetuitiesin a Nutshell, 51 Harv.L.Rev., 638, 639.
 ELEMENTS OF THE RULE
The period of perpetuities is that period within which an interest must vest or fail. That period is twenty-one years after any reasonable number of lives in being at the creation of the interest, plus actual periods of gestation.
The future interest is invalid unless it is absolutely certain that it must vest within the period of perpetuities. Probability of vesting, however great, is not sufficient. The certainty of vesting must have existed at the time when the instrument took effect (in this case, at the testator's death).
 CONSTRUCTION AND PERPETUITIES
"The Rule against Perpetuities is not a rule of construction but a peremptory command of law. It is not, like a rule of construction, a test, more or less artificial, to determine intention. Its object is to defeat intention. Therefore, every provision in a will or settlement is to be construed as if the rule did not exist and then to the provisions so construed, the rule is to be remorselessly applied." Gray, The Rule AgainstPerpetuities, 4th ed. § 629. Applying that statement to this case, our first *Page 1108 
duty is to construe the will exactly as we would if the Rule against Perpetuities did not apply, and interpret the words of the testator wholly without reference to it.
We now construe the testator's will with the foregoing principles in mind. Construing the will, it is apparent to us that the testator made separate gifts to his widow, his daughter, "my grandchildren" and to "the descendants then living of such grandchild . . . dying." The question is: do any of these gifts violate the Rule against Perpetuities? We hold that they do not, and reverse the trial court's conclusion to the contrary.
The widow was living on the date of the testator's death. The gift to her vested at that time. It is valid.
The gift to the daughter vests at the time both the testator and his widow are deceased. Although the daughter is specifically named as a beneficiary, there remains the condition that she survive both the testator and his widow before she may take her life interest. In any event, the interest in the daughter will vest, if at all, either at the death of the testator or a life in being (the widow), plus twenty-one years. It is valid.
The bequest to "my grandchildren" vests at the time of the death of the survivor of the widow or the daughter. As we have previously stated, at the testator's death, he had two grandchildren then living. Because the testator's daughter survived him, there remains the possibility that additional grandchildren may be born after testator's death. Plainly, the life interest to both Andrea and Wayne Coker, grandchildren who were living at the time of the testator's death, would be valid. It is equally plain that the interest of a grandchild born to the testator's only daughter after the testator's death would be valid, because it would vest, if at all, at a time within twenty-one years after the measuring life of testator's daughter.
It is the bequest under (B)(5) to the "descendants" of a grandchild which poses the problem in this case, especially as it relates to "descendants" of a possible grandchild born after the testator's death.
Construing the will, the words "my grandchildren" would include grandchildren born after the testator's death, but before distribution. It is perfectly clear that since the testator did not specify his two living grandchildren by name, other grandchildren could be born after his death, and the interest given to "descendants" of any afterborn grandchildren under (B)(5) could vest at a time beyond that allowed by the Rule against Perpetuities. This, without more, could make the gift invalid.
Leach discusses the rule as it would apply in a hypothetical situation which is quite similar to that presented by Item (B)(5). Leach states:
 "Second is the rule that where there is a gift to a class of sub-classes the gift to a particular sub-class can be valid even though the gift to another sub-class is too remote. Thus,
 "T bequeaths a fund in trust to pay the income to A for life, then to pay the income to the children of A for their lives, and upon the death of any child of A to pay the principal upon which such child was receiving the income to the children of such child. A has two children: C1, who was born before the death of T, and C2, who was born after the death of T. Plainly the life estates to both C1 and C2 are valid. Equally plainly the remainder to the children of C2 is invalid. The question concerns the remainder to the children of C1. The share which is to be divided between them will be known at the death of A, since thereafter no children of A can be born; the fraction which each of the children of C1 is to take in the share will be known at the death of C1; therefore all interests will vest within the life of the survivor of A and C1, both of whom were in being at T's death, and the gift is, of itself, valid. The fact that the contemporaneous gift *Page 1109 
to the children of C2 fails is immaterial." 51 Harv.L.Rev. 638, 650.[1]
We find that the gifts under Item (B)(5) to the "descendants" of Andrea and Wayne constitute bequests of a specific portion of the trust to separate and distinct subclasses. The portion being given is that share which Andrea and Wayne will respectively enjoy during their lifetime. Their shares will be known at the time of their mother's (the daughter's) death, since thereafter, no child of her can be born. Since these shares are certain, the fraction which each of the "descendants" of Andrea and Wayne will take, will be known at the respective deaths of Andrea and Wayne; therefore, the gifts to these subclasses will vest within the life of the survivor of lives which were in being at the testator's death (i.e., Andrea and Wayne). They are valid.
As previously noted, the share which might go to any afterborn grandchild will vest within a period allowed by the rule, and will be known at the death of the daughter. It is clear, however, that the share which would be divided among the subclass of the "descendants" of such afterborn grandchild, could vest at a time beyond that allowed by law, and such gift would be invalid; the fact that this gift to a subclass would fail, however, does not mean that the gift to the subclasses of the "descendants" of Andrea and Wayne must fail, as Leach notes in his hypothetical example.
Under the subject will, however, even the gift to the "descendants" of a grandchild who was not living at the time of the testator's death is validated. The testator specifically included language in the will which we will refer to as a "saving clause" which reads as follows:
 "The trusts created herein shall in no event continue for a period of time longer than the time allowed by law for the vesting of the share of any beneficiary in the trust estate. At the expiration of said time, unless said trust shall have sooner terminated in accordance with the provisions of this will, the property being held in trust herein shall immediately at the end of such period of time allowed by law, be transferred and paid over free from trust, to the beneficiary or beneficiaries then enjoying the use and benefit of the trust estate, and in the same proportions as in this will provided, irrespective of their ages at the time, and the trust shall immediately cease and terminate."
We are of the opinion that the "saving clause," properly construed, prevented any violation of the Rule against Perpetuities as to any bequest made under the will. "A provision will not be construed as violating the rule against perpetuities where there is a provision in the will that, if any of its provisions should become susceptible of an interpretation creating an estate of longer duration than permitted under the law, such provisions should be revoked as to the period of time beyond that permitted by law." 70 C.J.S.Perpetuities § 35, p. 626. Likewise, the annotation at 91 A.L.R. 771, 772, states that ". . . it seems clear upon principle, and is in fact well established by the decisions, that even though a will in the first instance provides for the postponement of vesting for a stated number of years, or until a stated date, no rule against perpetuities is violated if the will, *Page 1110 
as a dominant limitation, further expressly provides (or provides by inference) that the interest shall vest during or at the expiration of such number of lives in being as may be validly used to designate a period of contingency or restraint."
In Fitchie v. Brown, 211 U.S. 321, 29 S.Ct. 106, 53 L.Ed. 202
(1908), Mr. John Chipman Gray and Mr. Roland Gray, the author and editor, respectively, of the work, The Rule AgainstPerpetuities, argued successfully to the Supreme Court of the United States that the words "`. . . for as long a period as is legally possible, the termination or ending of said trust to take place when the laws require it under the statute,'" validated a gift made under a will because "the time set for the distribution is not too remote, because the testator has expressly said it shall not be too remote; he has said it shall be legally possible. It is a necessary qualification of the time for distribution that it shall not be too remote. Dates which are too remote are expressly excluded by the testator." The Supreme Court of the United States agreed, holding:
 "The whole of the language of the will must be considered, and while it says the trust is to continue as long as it is legally possible, it must also be remembered that a distribution of the whole estate is to be made, and therefore the continuation of the trust must also be limited by the direction to distribute; or, in other words, the trust is to continue as long as is legally possible and as shall be consistent with making the distribution as directed by the will. This distribution must be made at a time which is not too remote, — that is, a time within which the trust would be valid, — for the testator provided that the trust should only last that long." 211 U.S. 321, at 332, 29 S.Ct. 106, at 110, 53 L.Ed. 202, at 207.
Applying the "saving clause" to section (B)(5), we hold that the trust must terminate twenty-one years after the death of the survivor of the testator's widow, his daughter, and two grandchildren living at his death (all lives in being at the testator's death). Under the provisions of the will, the corpus will vest immediately in the persons enjoying the income of the trust if the trust has not terminated sooner. Because the trust must terminate, by its own provisions within the time limit for vesting, there is no violation of the Rule against Perpetuities. Any gift which has a possibility of remote vesting has been limited by the "saving clause" so as to make remote vesting an impossibility.
 ON REHEARING
Rehearing is granted on the issue of bearer bonds. That part of the original opinion concerning bearer bonds is withdrawn; the remaining part of the original opinion is retained, and the following is substituted for that portion of the original opinion which has been withdrawn.
 BEARER BONDS
Adelia Adams Coker, as next friend of the widow, Vera Adams, filed a petition to have all or half of the bearer bonds kept in the safety deposit box registered in the name of "Mr. or Mrs. W.C. Adams," declared to be the property of the widow.
The trial court heard all testimony orally, and found that the widow could have cashed all the bonds at any time, that "equity and good conscience" dictated that she be given half the bonds even though the evidence showed that all the bonds were purchased by the deceased, and he was the only person to enter the box during his lifetime. From the decree finding that half of the bearer bonds belonged to the widow and half belonged to the deceased's estate, executor First Alabama Bank of Montgomery appeals. We reverse.
In Garrison v. Grayson, 284 Ala. 247, 224 So.2d 606 (1969), the elements of a valid gift were set forth:
 "It has long been a rule in this jurisdiction that there are three distinct requirements which must be met in order for one to convey a valid inter vivos gift. These are: An intention to give and surrender title to, and dominion over, the property; delivery
of the property to the donee; *Page 1111 
and acceptance by the donee. Vinson v. Vinson, 262 Ala. 388, 79 So.2d 31; Hudgens v. Tillman, 227 Ala. 672, 151 So. 863."
The party alleging that a gift was made has the ". . . burden of establishing the fact of gift by clear and convincing proof." Walker v. Amason, 369 So.2d 786, 791 (Ala. 1979).
We have carefully reviewed the record and the decree rendered by the court and we find that the party alleging the gift has not maintained the burden of proof required. The trial court's finding that a gift was made is clearly erroneous.
In setting out his reasons for determining a gift had been made, the trial judge stated:
 "It seems to the Court that in all equity and good conscience that Mrs. Adams should be given one-half of the bearer bonds. She could have cashed them all if she had so desired."
Apparently the trial judge applied an incorrect standard for measurement of the burden on the party alleging the gift.
On appeal, great respect is paid to the trial court's judgment but the reviewing court will revise the trial court's judgment on questions of fact where, after making all proper allowances and indulging all reasonable intendments in favor of the trial court, it reaches the clear conclusion that the finding and judgment are wrong. Insurance Company of NorthAmerica v. Mays, 278 Ala. 20, 174 So.2d 700 (1965).
The entire cause is due to be reversed and remanded for further proceedings not inconsistent with this opinion.
APPLICATION FOR REHEARING GRANTED AS TO OWNERSHIP OF BEARER BONDS; APPLICATION FOR REHEARING OVERRULED AS TO THE DISPOSITION OF TESTAMENTARY TRUST. OPINION MODIFIED, REVERSED AND REMANDED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.
[1] The present case virtually duplicates the facts of this hypothetical. The only difference between the two is that in the hypothetical a single life interest is given to A, whereas in this case successive life interests are given to the testator's widow and only daughter. This difference, however, is wholly insignificant as far as an application of the Rule is concerned. In making a comparison between the two sets of facts, we reach the following conclusions: the life interest of A in the hypothetical equates with the life interest in the testator's only daughter; the interest of the "children of A" in the hypothetical equates with the gift to "my grandchildren"; and, finally, the interests of the "children of such child" in the hypothetical equates with the gift to "the descendants then living of such grandchild . . . dying." The initial life estate of the testator's widow has no impact on this correlation; thus, having a similar set of facts, we should adopt a similar approach and analysis. It is true that in presenting and analyzing his hypothetical, Professor Leach made it absolutely clear that his analysis would only apply when the testator separated the ultimate remainder into subclasses. We feel that in the present case the testator did so.