This case involves a dispute between a son and his stepmother (his father's widow) over the validity of a $50,000 blank check the son says was signed and given to him by the deceased father in April 1986, but which the son did not cash until shortly before the father's death in February 1990. A jury, after having been instructed on the law relating to inter vivos gifts, found in favor of the son. The trial court granted the widow a judgment notwithstanding the *Page 1021 
verdict. The son appeals. We reverse and remand.
Robert Jeff Dial, now deceased, had 14 children, including the appellant, Eddie T. Dial. The evidence tended to show that, over the years, Eddie, his brothers and sisters, and their now deceased mother, helped their father amass a large amount of land. The evidence indicated that in 1972, several years after the death of Grace Dial, the mother of Eddie, the father married Beatrice Dial, and that in 1979 he began dividing his land and cash among his children. There was evidence, for example, that he gave $30,000 each to two daughters and that he signed another check to another son, Luther Dial, with instructions to fill it out for $45,000, without informing Beatrice Dial of the transaction.
There was evidence that in April 1986, Robert Jeff gave Eddie a blank, signed check and instructed him to fill in the amount for $50,000 with Eddie as the payee. During that month, the evidence showed, Robert Jeff made a $41,623 deposit into the account on which the check was drawn. The balance in this account never fell below $50,000 until Eddie, in January 1990, cashed the $50,000 check at the Bank of York and deposited the proceeds at that bank; the check ultimately was paid by First Alabama Bank, the drawee bank. Robert Jeff died in February 1990.
In a will presented by the widow for probate, Robert Jeff Dial left his entire estate to the widow. Eddie and the other children contested the will, and the widow filed a counterclaim in which she claimed that on January 2, 1990, the date on the check, the deceased was incompetent and unable to comprehend anything, and unable to sign his name. The widow claimed alternatively that Eddie had been unjustly enriched. The trial court severed the will contest and the widow's counterclaim, and the issues presented by the widow's counterclaim were tried before a jury, which returned a verdict in favor of Eddie. The trial court, however, upon a motion by the widow, entered a JNOV, holding that Eddie had failed to present substantial evidence that the $50,000 was an inter vivos gift. The court further found that Eddie had been unjustly enriched, and that he must return the money to Beatrice and pay the court costs and legal interest. Eddie appeals.
A motion for directed verdict is a procedural device by which one party tests the sufficiency of the other party's evidence. See, Rule 50(a), Ala.R.Civ.P.; Alabama Power Co. v. Williams,570 So.2d 589 (Ala. 1990); John R. Cowley Bros., Inc. v.Brown, 569 So.2d 375, 376 (Ala. 1990); J. Hoffman S. Guin,Alabama Civil Procedure § 8.37 (1990). Similarly, a motion for JNOV simply "permits the trial court to revisit its earlier ruling denying the motion for directed verdict." Alabama PowerCo. v. Williams, 570 So.2d 589, 591 (Ala. 1990). The ultimate question as to either motion is whether the nonmovant presented sufficient evidence to allow submission of the case or issue to the jury for a factual resolution. Hoffman Guin, supra, at § 8.37. For actions filed after June 11, 1987, the standard of review applicable to motions for directed verdict and JNOV is the "substantial evidence rule." See § 12-21-12(a), Ala. Code 1975; Koch v. State Farm Fire Casualty. Co., 565 So.2d 226,228 (Ala. 1990).
Because this action was filed after June 11, 1987, the nonmovant, Eddie, had to present "substantial evidence"[1] that the $50,000 was, in fact, an inter vivos gift. In determining whether a party has presented substantial evidence, the trial court, and indeed this Court as well, must apply what has been called "a purely objective determination of whether the party having the burden of proof has produced [sufficient] evidence [of a factual dispute] requiring resolution by the jury." Exparte Oliver, 532 So.2d 627, 628 (Ala. 1988); see also John R.Cowley Bros., Inc. v. Brown, 569 So.2d 375 (Ala. 1990). *Page 1022 
Additionally, in reviewing a directed verdict or a JNOV, this Court must view all the evidence in a light most favorable to the nonmovant and must entertain such reasonable evidentiary inferences as the jury would be free to draw. Williams v.Allstate Ins. Co., 591 So.2d 38 (Ala. 1991).
Eddie claims that he presented sufficient evidence for the jury to find that the $50,000 was a valid inter vivos gift. We agree.
The elements of a valid gift are as follows:
 1) An intention to give and surrender title to, and dominion over, the property:
2) Delivery of the property to the donee; and
3) Acceptance by the donee.
See First Alabama Bank of Montgomery v. Adams, 382 So.2d 1104,1110 (Ala. 1980); Garrison v. Grayson, 284 Ala. 247,224 So.2d 606 (1969). "The party alleging that a gift was made has the 'burden of establishing the fact of gift by clear and convincing proof.' " Adams, 382 So.2d at 1111 (quoting Walkerv. Amason, 369 So.2d 786, 791 (Ala. 1979)).
The main issue in this case is whether Eddie sufficiently proved, by clear and convincing evidence, the existence of his father's intention to give him the $50,000 as a gift. "The existence of an intention to give is to be determined from a consideration of the conduct and declarations of the alleged donor and the relationship and circumstances of the parties."Garrison, 284 Ala. at 249, 224 So.2d at 608.
The evidence tended to show that Eddie received a signed, blank check from his father in April 1986. Eddie testified that his father told him to make the check out for $50,000 and to use the money to buy Eddie's sister's half of some land that Eddie and his sister jointly owned. Eddie further testified that he tried to buy out his sister, but that she refused to sell at a reasonable price, and that he, therefore, saved the blank check in case his father needed the money later. He further testified that when his father was very sick, he went to the family lawyer and had the check typed out for $50,000 and that he cashed it and deposited the proceeds the same day. It is undisputed that the check was paid before Robert Jeff's death about a month later.
The widow, Beatrice, presented conflicting evidence relating to Robert Jeff's intention. She presented testimony indicating that, if Robert Jeff did, in fact, give Eddie the check, that it was for the purchase of feed to be used in the farming operation and not for Eddie's own personal use.
The critical question in reviewing the JNOV is whether Eddie presented substantial evidence that Robert Jeff signed the blank check with the intent to make a gift to Eddie of the $50,000. To prove his father's intent at the time, Eddie presented evidence that the signature was genuine and that his father previously had signed another blank check and given it to him. Eddie's brother Luther also testified that, in 1984, Robert Jeff had given him — Luther — a signed, blank check, and had told him to fill it out for $45,000. Luther testified that Robert Jeff told him that he was also going to give Eddie some money. Luther testified that his father gave the two brothers the money because they had spent their lives working on the farm for their father and that the money was a gift to show his appreciation. Eddie also presented evidence that other children in the family had been given gifts of money and land by Robert Jeff and that, after Robert Jeff gave Eddie the check, Robert Jeff put more than $41,000 into the account and that the amount in the account never fell below $50,000 before Eddie cashed the check.
After reviewing the record, we conclude that Eddie presented sufficient evidence for a jury to conclude that Robert Jeff gave Eddie the signed check with intent to give the $50,000 to Eddie as a gift.
Beatrice's basic argument on appeal is that a signed, blank check is incapable of being delivered, as a matter of law. We disagree.
 "In order to constitute an effectual delivery the donor must not only have parted with the possession of the property, but he must also have relinquished to *Page 1023 
the donee all present and future dominion and control over it, beyond any power on his part to recall."
38 C.J.S. Gifts § 20 at 799-800 (1943). See Hudgens v. Tillman,227 Ala. 672, 151 So. 863 (1934); Davis v. Wachter, 224 Ala. 306,140 So. 361 (1932). Until there is a delivery, the donor may revoke the intended gift, and the death of the donor is an automatic revocation. See 38 C.J.S. Gifts § 55 at 842-43.
 "[T]he gift of the donor's own check is but the promise of a gift and does not amount to a completed gift until payment or acceptance by the drawee. . . . [A]t any time prior thereto, the donor may revoke it by stopping payment, and it is ipso facto revoked by the death of the donor. The gift of a check becomes complete when, in the donor's lifetime, it is paid, certified, or accepted by the drawee. . . . In short, any step which changes the transaction from a mere executory and voluntary promise by the donor into an executed transaction will validate it."
Id. See Smythe v. Sanders, 136 Miss. 382, 101 So. 435 (1924).
There was substantial evidence that on January 2, 1990, a month before the death of the donor, Eddie cashed the check for $50,000, made out to him as payee, and that the drawee bank accepted the check and paid it. We hold, therefore, that there was sufficient evidence from which the jury could have concluded that, upon payment of the check by the drawee bank, Robert Jeff no longer had any control over the $50,000 and that Robert Jeff 1) intended to give and surrender title to, and dominion over, the check; 2) that the check was delivered to Eddie; and 3) that Eddie accepted the gift when he filled out the check for the amount designated by the donor and cashed it and deposited the proceeds into his account and the check was paid by the drawee bank.
The trial court erred by entering the JNOV in favor of the widow. We reverse the judgment and remand the cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and SHORES, HOUSTON and KENNEDY, JJ., concur.
[1] "Substantial evidence" has been defined as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co.of Florida, 547 So.2d 870, 871 (Ala. 1989); see Ala. Code 1975, § 12-21-12.