THOMAS, Judge.
Michael E. Foster (“Michael”), the executor of the estate of his father, Harry Allan Foster, Sr. (“Harry”), appeals from a judgment of the Mobile Probate Court granting the motion for a judgment as a matter of law (“JML”) filed by Harry Allan Foster, Jr. (“Allan”), and denying Michael’s “Petition for Return of Personal Property,” which he filed on behalf of the estate. We affirm.
On September 3, 2009, Harry committed suicide.[1] The following facts are undisputed. On September 1, 2009, Harry wrote a personal check on his Colonial Bank checking account paid to the order of Colonial Bank in the amount of $80,000 to purchase a certified check. The certified check he purchased is also dated September 1, 2009, with Colonial Bank listed as the drawer, Wachovia Bank listed as the drawee, and made payable to the order of H. Allan Foster in the amount of $80,000. Harry mailed the check by express mail on September 2, 2009; it arrived at Allan’s house on September 8, 2009. However, Harry had committed suicide on September 3, 2009, hours before the express-mail package containing the check was delivered to Allan’s house.
On November 4, 2009, Michael filed a “Petition for Letters of Testamentary,” and subsequently, on February 2, 2010, the probate court appointed Michael as executor of Harry’s estate. On September 30, 2010, Michael, as executor of Harry’s estate, filed a “Petition for Return of Personal Property” regarding the certified check in the amount of $80,000 Harry had sent to Allan before Harry’s death. Allan filed a motion to dismiss the petition on December 22, 2010, which the probate court denied on March 2, 2011.
On June 14, 2011, the probate court heard ore tenus testimony regarding the “Petition for Return of Personal Property” and the facts surrounding the issuance of the certified check Harry had sent to Allan, as well as Allan’s claim against the estate for reimbursement of expenses and Michael’s objection, on behalf of the estate, to the claim for reimbursement. Allan was the only party to testify at the trial. He testified that he had had three separate conversations with Harry in which Harry had stated that he was planning to give him a monetary gift and that, in two of those conversations, Harry had stated that the monetary gift would be in the amount of $80,000. Allan further testified that when he had asked Harry what he should spend the money on, Harry had replied that Allan should “spend it on that beautiful family of [his].” Additionally, Allan testified that Harry had known that Allan’s son suffered from myelodysplastic syndrome, a form of blood cancer, that Allan’s daughter was getting married on August 15, 2009, and that Allan had incurred numerous expenses related to his son’s medical care and his daughter’s wedding. At the end of his testimony, Allan moved the probate court for a JML, which the probate court orally granted. On June 15, 2011, the probate court entered a written judgment denying the “Petition for Return of Personal Property,” determining that the “official” check sent to Allan was a completed gift and not part of the estate, and approving only a portion of Allan’s claim for reimbursement of expenses. Michael, as executor of the estate, filed a timely notice of appeal to the Alabama Supreme Court on June 24, 2011, which transferred the appeal to this court, pursuant to Ala.Code 1975, § 12-2-7(6).
On appeal, Michael argues that the probate court erred in granting a JML in *1012 favor of Allan and denying the “Petition for Return of Personal Property” because, he says, the certified check cannot be considered a valid gift, as it was not delivered before Harry’s death, and because, he says, there was insufficient proof that Harry intended the certified check to be a gift.
Our review of Michael’s argument that the trial court erred in granting a JML in favor of Allan and finding that the certified check in the amount of $80,000 was a completed gift and not an asset of the estate is governed by the following standard of review:
“In Delchamps, Inc. v. Bryant, 738 So.2d 824 (Ala.1999), our supreme court explained the standard of review applicable to a trial court’s ruling on a motion for a [JML]:
“ ‘When reviewing a ruling on a motion for a [JML], this Court uses the same standard the trial court used initially in granting or denying a JML. Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3 (Ala.1997). Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case or the issue to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350 (Ala.1992). For actions filed after June 11, 1987, the nonmovant must present “substantial evidence” in order to withstand a motion for a JML. See § 12-21-12, Ala.Code 1975; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. Carter, 598 So.2d at 1353. In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Motion Industries, Inc. v. Pate, 678 So.2d 724 (Ala.1996). Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court’s ruling. Ricwil, Inc. v. S.L. Pappas & Co., 599 So.2d 1126 (Ala.1992).’
“738 So.2d at 830-31.”
Leonard v. Cunningham, 4 So.3d 1181, 1184 (Ala.Civ.App.2008).
On appeal, Michael first asserts that he presented substantial evidence demonstrating that the certified check had not been delivered at the time of Harry’s death; thus, he says, it was an uncompleted gift and the funds represented by the certified check should have devolved immediately to the estate, pursuant to Ala. Code 1975, § 43-2-830. We disagree.
It is well settled that the elements of a valid gift are: “[a]n intention to give and surrender title to, and dominion over, the property; delivery of the property to the donee; and acceptance by the donee.” Garrison v. Grayson, 284 Ala. 247, 249, 224 So.2d 606, 608 (1969) (citing Vinson v. Vinson, 262 Ala. 388, 79 So.2d 31 (1955); and Hudgens v. Tillman, 227 Ala. 672, 151 So. 863 (1934)). Michael relies upon Dial v. Dial, 603 So.2d 1020 (Ala.1992), to support his argument that the certified check was an uncompleted gift because it had not been delivered before Harry’s death. In Dial, our supreme court reversed the trial court’s judgment notwithstanding the verdict[2] and concluded that the decedent’s *1013 son had presented sufficient evidence from which the jury could have concluded that a $50,000 check was a valid inter vivos gift. Id. at 1028. The evidence presented at trial indicated that the father had given the son a signed blank check in 1986 and that the son had cashed the check in 1990, approximately a month before the father died. Id. at 1022. Thus, Dial is unlike the present case because the check in Dial was a personal check and had been both delivered and cashed before the father died. Id.
However, although distinguishable, Dial does provide some guidance in the present case. Our supreme court stated in Dial:
“ ‘In order to constitute an effectual delivery the donor must not only have parted with the possession of the property, but he must also have relinquished to the donee all present and future dominion and control over it, beyond any power on his part to recall.’
“38 C.J.S. Gifts § 20 at 799-800 (1943). See Hudgens v. Tillman, 227 Ala. 672, 151 So. 863 (1934); Davis v. Wachter, 224 Ala. 306, 140 So. 361 (1932). Until there is a delivery, the donor may revoke the intended gift, and the death of the donor is an automatic revocation. See 38 C.J.S. Gifts § 55 at 842-13.
“ ‘[T]he gift of the donor’s own check is but the promise of a gift and does not amount to a completed gift until payment or acceptance by the draw-ee.... [A]t any time prior thereto, the donor may revoke it by stopping payment, and it is ipso facto revoked by the death of the donor. The gift of a check becomes complete when, in the donor’s lifetime, it is paid, certified, or accepted by the drawee.... In short, any step which changes the transaction from a mere executory and voluntary promise by the donor into an executed transaction will validate it.’
“Id. See Smythe v. Sanders, 136 Miss. 382, 101 So. 435 (1924).”
603 So.2d at 1022-23 (emphasis added). Thus, under Alabama law, the determining principle of when the gift of a check becomes complete hinges on the moment when the donor surrenders all possibility of stopping payment on the check because, at that moment, the check is no longer a promise to pay but, instead, is payable because the donor has given up all right, title, and interest in the funds represented by the check.
In this case, the record is clear that the bank certified the check. The exhibits admitted at trial establish that when Harry purchased the certified check from Colonial Bank, Harry’s personal account was debited in the amount of $80,000, that money was transferred to Colonial Bank, and Colonial Bank became primarily liable for the payment of the certified check. Moreover, Alabama courts have long observed the distinction between a personal check and a certified check. Specifically, as our supreme court stated in Walker v. Sellers, 201 Ala. 189, 189, 77 So. 715, 715 (1918):
“As between the bank and the payee a cashier’s check is, in legal effect, the same as a certificate of deposit or a certified check. Clark v. Chicago, etc., Co., [186 Ill. 440 57 N.E. 1061 (1900) ]; Lummus Cotton Gin Co. v. Walker, 195 Ala. 552, 70 South. 754 [ (1916) ].
“Certainly the purpose in each case is the same, that is, to enable the holder to use the check as money; and when a check is certified it ceases to possess the character, or to perform the functions, of *1014 a check, but represents so much money on deposit, payable to the holder on demand. National Com. Bank v. Miller, 77 Ala. 168, 175, 54 Am. Rep. 50 [(1884)]. ‘Such a deposit stands upon exactly the same ground as any other.’ Id.”
Therefore, in this case, the death of Harry did not affect his gift to Allan, because the check was certified, the funds had already been debited from Harry’s account, and Harry had relinquished all control and right over the certified check before his death by sending it by express mail to Allan on September 2, 2009. Therefore, we conclude that there was a completed gift from Harry to Allan, although Allan had not received the certified check or collected the funds represented by the certified check before Harry’s death.
Next, Michael contends that the certified check was not a gift because, he says, Allan failed to provide sufficient proof that Harry had intended the certified check to be a gift. It is well settled that “[t]he party alleging that a gift was made has the 1... burden of establishing the fact of gift by clear and convincing proof.’ ” First Alabama Bank of Montgomery v. Adams, 382 So.2d 1104, 1111 (Ala.1980) (quoting Walker v. Amason, 369 So.2d 786, 791 (Ala.1979)). Therefore, Allan was required to present clear and convincing evidence indicating that the certified check was a gift. We cannot conclude that the probate court erred in determining that the certified check was intended to be a gift because the record reflects that Allan provided evidence indicating that the certified check was a gift that Harry intended to be used for the benefit of Allan’s family.
In its judgment, the probate court concluded:
“[Harry] had a positive relationship with Allan and Allan’s children.
“On three (3) different occasions during the weeks immediately preceding [Harry]’s death, [Harry] made statements which indicated that he was contemplating making a gift to Allan.
[[Image here]]
“In the instant matter, Allan was the natural object of [Harry]’s beneficence. [Harry]’s acts of causing the Check to be prepared by Colonial Bank and mailing the Check to Allan by express mail clearly reflect [Harry]’s intent to unequivocally give and surrender title to the funds represented by the Check to Allan. Further, it is clear that Allan received possession of the check and accepted the Check. Given the totality of the facts in this case, the Court is of the opinion, and therefore concludes that the Check (and the funds represented thereby) belong to Allan and do not constitute an asset of [Harry]’s estate.”
Under Alabama law, “[t]he existence of an intention to give is to be determined from a consideration of the conduct and declarations of the alleged donor and the relationship and circumstances of the parties.” Garrison, 284 Ala. at 249, 224 So.2d at 608. As noted above, Allan was the only person to testify at the trial. He testified that he had had three conversations with Harry regarding Harry’s intention to give him a monetary gift to spend on his family and that Harry had stated twice that the monetary gift would be in the amount of $80,000. On cross-examination, Allan testified that he had not disclosed the three conversations with Harry regarding the gift in his responses to interrogatories because he had believed that the interrogatories were asking whether he had had any conversations regarding the gift with any third parties. The probate court heard Allan’s testimony on direct examination and on cross-examination, and, thus, it had the opportunity to evalu *1015 ate Allan’s credibility and demeanor. Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986) (“The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses.”).
Allan further testified that he had become closer to Harry in the recent years before Harry’s death and that Harry had visited with Allan’s family on several occasions. He also testified that he had asked Harry how he was to use the money and that Harry had responded that Allan was to use it on his family. Allan also presented evidence indicating that Harry had taken the time to secure a certified check payable to the order of Allan in the amount of $80,000 and had decided to express mail the check to ensure that Allan received the check and the funds it represented. Michael did not present any evidence to contradict Allan’s testimony or to establish that the certified check was not a gift to Allan to use for the benefit of his family.
Therefore, because all the evidence presented supported the conclusion that Harry had intended that the certified check made payable to the order of Allan in the amount of $80,000 and sent by express mail to Allan’s home be a gift to Allan to use for the benefit of his family, we cannot conclude that the probate court erred in determining that the certified check was a gift.
Accordingly, for all the aforementioned reasons, we affirm the probate court’s judgment.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.

. Harry was suffering from prostate cancer at the time of his death.

. A judgment notwithstanding the verdict' is now denominated a renewed motion for a JML. See Vaughan v. Oliver, 822 So.2d 1163, 1170 (Ala.2001) (“Rule 50(a), Ala. R. Civ. P., now designates a motion for a directed verdict as a motion for a judgment as a matter of *1013 law, and Rule 50(b) now designates a motion for [a judgment notwithstanding the verdict] as a renewed motion for a judgment as a matter of law.”).